OMAHA AND REPUBLICAN VALLEY RAILROAD, PLAINTIFF IN ERROR, v. JOSHUA P. BROWN, DEFENDANT IN ERROR.

Railroads: OBSTRUCTION BY BRIDGE: DAMAGE TO ADJOINING LAND. The O. and R. V. R. Co. constructed a railway bridge across the Platte river, the piers being twenty feet apart from center to center. An ice gorge having formed above the bridge, by which the water of the river was thrown out of the channel, whereby the property of B. was injured and destroyed, *Held*, That there being sufficient evidence tending to prove that the openings between the piers were not sufficient to permit the free passage of such quantities of ice and water as might reasonably be expected to occur occasionally, the verdict would not be set aside.

ERROR to the district court for Saunders county.   Tried below before POST, J.

*A. J. Poppleton* and *J. M. Thurston,* for plaintiff in error.

*W. J. Connell* and *George W. Doane,* for defendant in error.

MAXWELL, J.

This cause was before this court in the year 1883, and is reported in 14 Nebraska, 170, the judgment being reversed.   On the second trial the jury returned a verdict in favor of Brown for the sum of $6,000.   The principal ground of error relied upon in this court is, that the verdict is unsupported by the evidence.

It is alleged in the petition in substance that in the year 1876 the railroad company constructed a railway bridge across the Platte river, between the counties of Douglas and Saunders; that Brown, about the year 1876, erected a grist mill on the bottom lands south of the Platte river, in Saunders county, and some distance below the bridge in question.   This mill was propelled by water from a stream running parallel with the river.   In March, 1881, an immense ice gorge was formed at the bridge, which for a time made a complete dam across the river, and caused the water to flow over the bottom lands south of the river, depositing sediment from one inch to three feet in thickness and destroying the water power and mill property of Brown. It is also alleged that said bridge and the approaches to the same were constructed in such a negligent, wrongful, and improper manner as to create and remain an unlawful obstruction in said Platte river and to prevent the natural flow of water and ice therein, and to cause the same to gorge, back up, and overflow upon the adjoining lands,

and that in consequence of such negligent and wrongful construction of said bridge and its approaches the ice gorge in question formed next to said bridge and caused the injury complained of.

The railway company in its answer admits the construction of the bridge; that it continues to use the same as a part of its line, but denies that said bridge was constructed in a negligent, wrongful, or improper manner, and alleges that it was and is a suitable, safe, proper, and lawful structure. It denies that the bridge formed an obstruction to the flow of ice or water in said river in such manner as to cause a gorge of the ice therein, or to cause the river to overflow its banks, and alleges that the damages sustained by Brown were caused by the unprecedented high water in the spring of 1881, and resulted wholly from the elements or the act of God.

The question presented is, whether or not the bridge in question was properly constructed and maintained. The testimony shows that the Platte river at the point where the bridge is located is a little less than 2,100 feet in width. The bridge in question, as described by the engineer of the railroad company, "is constructed with pile bents, five piles to the bent, driven in the sand, which were driven by a hammer of 2,250 fall." The following is a portion of his testimony:

Q. What is the distance between bents from center to center of the piles?

A. Twenty feet.

Q. What is the percentage of the space taken up by the piling in that bridge?

A. About one in twenty.

Q. About five per cent?

A. Yes, sir.

Q. How high were the banks of the river at the time of the construction of that bridge over the ordinary surface of the river in low water times on the south side of the river?

A.    About three or four feet.

Q.    How were they on the north side?

A.    About six or seven feet.

  *  *  *  *  *  *

Q.    How high was that bridge in the clear to the bottom of the stringers from the ordinary surface of the water?

A.    I should say from low water mark to the bottom of the stringers, my impression is it was about eight feet, between seven and eight feet.

 ·*  *·  *  *  *  *  * '

Q.    I will ask you as an engineer, in your opinion, whether the bridge that you planned and constructed on the Platte river at Valley, in view of the known habits and floods of the river, and in view of the fact that all other railway bridges along its course were constructed in substantially the same manner and had up to that time proved sufficient, if it was a suitable, safe, and proper bridge to accommodate the ordinary known and usual floods of ice and water?

A.    Yes, sir.    From the experience I have had and from the observation I have had from the river when I had charge of bridges, and from going and examining the Oreapolis bridge to see if there were any damages, I concluded to the best of my judgment the bridge was sufficient for the ice and floods.

Three other railway engineers also testify to substantially the same facts.    It also appears from the testimony that the first bridge constructed in this manner, in this state at least, was that across the North Platte on the main line of the Union Pacific railway, the width of the channel being about 2,000 feet.    This bridge was erected in 1868, and continued unimpaired until the breaking up of the ice in the spring of 1881.    The second bridge constructed on this plan was that of the B. & M. railway across the Platte near Kearney, in 1871–2.    The river at that point is divided into numerous channels, their aggregate width being

about 4,000 feet. The third bridge across the river was that of the B. & M. railway near Oreapolis, constructed in 1872. This bridge stood until the spring of 1881, when a portion of it was taken out by the ice. In rebuilding it the distance between the piers in the main channel was greatly increased, apparently for the purpose of not obstructing ice or driftwood. The fourth railway bridge in the order of time constructed across the river was the one in question. The testimony tends to show that the engineer made but little inquiry into the habits of the river before constructing the same. He seems to have examined the bridge at Oreapolis, and as that had stood for four years without serious difficulty, he seems to have taken it for granted that it would continue to do so. Indeed, it may be doubted whether the testimony shows that any of the engineers had given that careful inquiry and consideration to the habits of the river for a series of years as to enable them to make careful estimates of the amount of water and ice which might reasonably be expected to occur occasionally, without regard to such great and sudden overflows as are often designated acts of God. At any rate, the plan of the North Platte bridge was substantially adhered to, the distance between the bents being uniform, whether driven in deep or shallow water, in the main channel or on a sand bar. That such a bridge is sufficient for ordinary seasons, would seem to be established. But it is not so clear that it would freely permit the passage of ice and water in seasons where the winter has been very severe and long continued and accompanied with deep snow. One witness testifies that in the spring of 1867 the water in the river was about as high as in 1881, but not so much ice. A witness also testifies that he has seen cakes of ice going down the river 30, 40, and 50 feet across. On the part of Brown three engineers, men familiar with the subject, were called as witnesses. Objections were made to them because they were not railroad engineers. But this objection is untena-

ble.    That they possessed knowledge upon the subject is clearly shown, and the weight of their testimony was for the jury to determine.    All of these witnesses testify that the openings in the bridge were too narrow to admit of the free passage of ice.    This was proper for the jury to consider.    In conclusion, the proof shows as clearly as human testimony can establish a fact, that the gorge formed against the bridge; that in consequence thereof nearly the entire water of the river was thrown out of the channel on to the bottom lands, and that thereby the property of Brown was injured and destroyed, and his loss is the full amount of the verdict.    We adhere to the law as stated in this case in 14 Neb., 173, but in our opinion the bridge in question was not constructed according to the rules therein stated. It follows that the judgment must be affirmed.

JUDGMENT AFFIRMED.

REESE, J., having been a witness on the trial in the court below, did not sit at the hearing and took no part in the decision.

COBB, CH. J., dissenting.

While the judgment of the district court must be affirmed for the want of a majority of this court to reverse it, I regret to be obliged to withhold my concurrence in the above opinion of my brother Maxwell.    I find no fault with the syllabus, so far as it goes, and I agree that the weight to be given to the conflicting testimony of the professional witnesses is a matter which the law leaves with the jury, and with which this court cannot interfere, whatever might be our opinion as to the relative weight that we would accord to the testimony of such professional witnesses in a matter heard before ourselves.

But upon the trial there was evidence admitted on the part of the plaintiff therein which I think should have been

excluded; and in overruling the objection of the defendant to such evidence, there was prejudicial error. I copy from the bill of exceptions a part of the direct testimony of W. C. Walters, a witness on the part of the plaintiff in the court below. After having testified at considerable length as to the ice gorge and overflow of 1881, the value and damage to plaintiff's property, his examination continued as follows:

Q. State, if you know, from personal observation how this bridge has affected the flow of ice and water in the Platte river at other times than at the time of this particular gorge, with reference to throwing water and ice or causing gorges to throw the ice and water out of its banks?

A. The bridge was so constructed that it was almost impassable.

Objected to by defendant's attorney as incompetent. Objection sustained.

Q. State what it has done, that you have seen it do since the gorge of '81?

Objected to as incompetent by defendant's attorney. The gentleman has repeatedly stated in the presence of the jury that during last winter and '81 that the company was compelled to keep a gang of men at their bridge for the purpose of blowing up and removing the ice gorge, and he has stated this against our objection for the purpose, as we say, of influencing the jury in the consideration of this case, and the statement is not supported by the evidence.

Q. Do you know whether or not at other seasons than this particular season of '81 gorges of ice have been forced against this particular bridge?

Objected to for the reason that it is leading. Objection overruled.

A. It has.

Q. State what are the facts in that regard, and describe the extent of the flow of the water and ice in the river?

Objected to as incompetent, for the reason that it has no

tendency to prove the negligent construction of the road. Objection overruled. Defendant excepts.

A. In the spring of 1882 the ice gorged against the bridge.

Under the law as laid down in this case when it was before this court at a previous term, 14 Neb., 170, the only question to which the above testimony could be held to be applicable was, whether at the time of the construction of this bridge, in the year 1876, the said railway company, in planning and constructing its bridge, brought to their execution the engineering knowledge and skill ordinarily practiced in such works, and saw to the practical application of such knowledge and skill to the work in hand, among other things so as to allow of the passage of water and ice such as is known to pass in the stream annually, or which may reasonably be expected to occur occasionally.

The law as thus laid down ought to have been followed by the district court in the second trial. But in the admission of the above testimony I think that it was widely departed from and disregarded. The conduct of the river in years subsequent to the erection of the bridge could have no possible bearing upon the question of care, diligence, and skill used by the railway company in the plan and construction of the bridge in question. The plaintiff's cause of action was complete, if ever, in 1881; hence from every point of view evidence of the conduct of the river in 1882 was wholly irrelevant and inadmissible, and I think that said testimony may be presumed to have been prejudicial and injurious to the plaintiff in error.

For the above reason I think that the judgment ought to be reversed and a new trial awarded.