SAMUEL McCLENEGHAN, PLAINTIFF IN ERROR, V. OMAHA AND REPUBLICAN VALLEY RAILROAD CO., DEFENDANT IN ERROR.

1. **Instructions** set out at length in the opionion, examined, and *Held*, Erroneously given.

2. **Railroads**: BRIDGES: DAMAGE TO ADJACENT LANDS. A railroad corporation, although authorized by law to construct its road across a stream, is liable for damage done to lands adjacent thereto by the construction of a bridge which causes the water and ice to gorge and overflow such land, and in the selection of the character of bridge to be built, due regard must be had to the rights of the adjacent land owners, as well as to the safety of the public who may travel over its road, or who may require the use of the same for the transportation of property.

ERROR to the district court for Saunders county. Tried below before POST, J.

*W. H. Munger* and *E. F. Gray*, for plaintiff in error, cited: *O. & R. V. R. R. Co. v. Brown*, 14 Neb., 170. *O. & R. V. R. R. Co. v. Brown*, 16 Neb., 161. *Brown v. The Cayuga & Susquehanna R. Co.*, 12 N. Y., 486. *Lawrence v. The Great Northern R. R. Co.* (16 Ad. & El.), 643.

*J. M. Thurston* and *W. R. Kelly*, for defendant in error, cited: Hilliard on New Trials, 267. *Owens v. Kansas City, etc., R. R. Co.*, 8 Southwestern Rep. (Mo.), 350. *Sioux City & Pacific R. R. Co. v. Finlayson*, 16 Neb., 578. *Cardwell v. Bridge Co.*, 113 U. S., 205. *Pound v. Turck*, 95 U. S., 459. *O. & R. V. R. R. Co. v. Brown*, 14 Neb., 173. *Bedford, etc., R. R. Co. v. Rainbolt*, 21 Am. and Eng. R. R. Cases, 466. *Kansas Pacific R. R. Co. v. Miller*, 2 Colo., 444. *Grote v. R. R. Co.*, 5 English R. R. and Canal Cases, 649. *Ward v. Louisville, etc., R. R. Co.*, 3 Am. and Eng. R. R. Cases, 506. *Bellinger v. N. Y. C. R. Co.*, 23 N. Y., 42. Field's Law of Damages, 19.

REESE, CH. J.

This action was instituted in the district court of Saunders county for the recovery of damages resulting from the alleged negligent construction of the railroad bridge of defendant in error across the Platte river, by which an unlawful obstruction is alleged to have been created in the river, which prevented the natural flow of the ice and water therein and caused the ice and water to gorge, back up, and overflow the banks of said river, to the injury of plaintiff's farm and the property thereon.

A jury trial was had, which resulted in a verdict and judgment in favor of defendant in error, who was defendant below, and from which plaintiff brings the case to this court by proceedings in error.

A large mass of testimony was submitted to the jury, about eighty witnesses having been examined, and in which there was a sharp conflict upon almost every question at issue in the case. The preponderance of the evidence was largely in favor of defendant, and will not be examined further than to say that the verdict of the jury was clearly supported thereby.

The case is presented here solely upon errors of law occurring at and after the trial, and it is argued that even though the preponderance of evidence was against plaintiff, yet he had the right to have the case fairly submitted to an impartial jury, whatever the testimony might be.

A large number of errors are presented, but few of which will be examined, as the same questions will not likely arise upon a retrial, should one be had.

From the testimony introduced, and from the instructions asked by the parties to the action, it plainly appears that the case was presented to the jury upon these two theories contended for by the parties to the trial. On the part of plaintiff it was contended that the bridge was so constructed as to unnecessarily impede the flow of the

river, and thereby cause the water and ice to dam up and gorge above the bridge, which necessarily resulted in an overflow of the land owned by plaintiff opposite and below the gorge.

While, upon the other hand, it seems to have been contended by defendant that the highest obligation resting upon it in the construction of the bridge was that of its safety and use in the general requirements of railroad traffic.

Edmund Lane, the engineer who constructed the bridge, was called as a witness for defendant. He testified that his occupation was that of a civil engineer; that he had followed that profession about twenty years, nineteen of which had been in the state of Nebraska. He testified as to the history and habits of the Platte river, having had a general knowledge of it since 1871 or 1872, and having constructed seven or eight bridges across it during the time referred to; that in the construction of a bridge across a river similar to the Platte the first and primary consideration would be to provide for the passage of the water and to avoid obstruction of ice or drift wood or any other things which might be expected from the general character of the stream; and next, the strength and durability of a bridge required for the traffic. We quote briefly from his testimony, as follows:

Q. Taking into consideration the state of engineering skill and knowledge, as it existed in 1876 (the time of the construction of the bridge in question), together with such knowledge of the history and habits of the Platte river as it was then known, what, in your opinion, was then the best and safest character of structure to be erected across Platte river in that place?

A. I should think a pile and stringer bridge was sufficient for all requirements, for the passage of ice and water and any other obstruction, and also for the requirements of the traffic.

Q. In the construction of a pile and stringer bridge, what is the practical limit of the length of a span?

A. About twenty feet.

Q. What is the result if a longer span than twenty feet be admitted in a pile and stringer bridge?

A. It would have to be trussed, you could not get timber long enough to carry the weight.

Q. What is the difference in the use, between a twenty or twenty-four? What is the objection to a longer span as to safety or stiffness?

A. The objection to a longer span is the shock that the rolling train gives, a wave motion to it, which is bad for longer timber.

Q. Can a pile and stringer bridge, practical therefor, be constructed with greater spans than twenty feet?

A. Not with safety for a railroad bridge.

Q. If longer spans be adopted, what is the character and sort of bridge?

A. A truss bridge.

Q. Which, between a truss bridge and a pile and stringer bridge, having reference to the safety in its use, and of general requirements of railroad traffic, which is the better sort of bridge?

(Objected to as incompetent, immaterial. Overruled. Exception.)

A. For wooden structures I think the pile and stringer bridge the safest.

Q. What is the general character of the Platte river, as to the permanency of its channel? That is, as to the permanency of its channel at a given place?

A. It is not permanent, it is movable.

Q. What was its character at Valley in 1886, as to the establishment of its channel at a given place?

A. There was no permanent channel; it was always shifting.

Q. Does the fact that the channel is a shifting one,

that is, moving from place to place within its banks, have any effect in determining the character of bridge to be erected there, as to whether it should be a truss bridge, or pile and stringer?

A. Taking the Platte river and its characteristics, with the channel as wide and no defined channel, I prefer a stringer bridge to a truss bridge. If it was a place where the channel was defined in one place, you might generally build a truss bridge for the flow of ice to pass through.

We copy the following from the cross-examination:

Q. Now, I understand you to say, that you regarded a pile and stringer bridge a safer structure than a truss bridge? Wherein is it a safer bridge for the passage of traffic?

A. It is easier constructed, and it is safer on account of derailment. On account of derailment we generally have guards along on the outside of the bridge, and the car may cross the bridge and get off, but with the truss bridge if a car got a little to one side it might strike the truss and knock it down.

Q. If a car should run off from the track while crossing the bridge, and you had the truss up, it would be likely to strike against the truss and knock it out of place?

A. Yes, sir, and knock some of its members out.

Q. If you did not have the truss there, would it not be likely to go into the river?

A. It might go, but we have outguards on the side for protection.

Q. How high guards?

A. We use six by eight timbers.

Q. That is so the wheels would not run off?

A. Yes, sir.

Q. These guards are put outside the iron rails?

A. Yes, sir, and sometimes the inside had guards, too.

Q. They are placed how far from the iron rail?

A. About a foot or eighteen inches.

Q. That is so that if the car got off, the wheels would not run over and get off the bridge?

A. That is mostly the object, yes, sir.

Q. Could you not have that guard on a truss bridge just the same?

A. We do it on truss bridges, just the same.

Q. Then if you do it on a truss bridge, and that guard keeps the car from going outside of it, then it would not strike the truss, would it?

A. The top of the car gets slued round, so it is very apt to knock the truss. I have known them to knock down truss bridges that way, and I have known them to go across tressel bridges that way. *  *  *  *

Q. Truss bridges have been in use by railroads, have they not?

A. Yes, sir.

Q. They are in use still to-day, are they not?

A. Yes, sir.

Q. Constantly being used?

A. Yes, sir.

Q. Are they not regarded as practicable?

A. Yes, sir.

Q. And were regarded, before 1876, as practicable, were they not?

A. Yes, sir.

This must serve to indicate what, to some extent, was the contention of the parties in the trial to the jury.

Defendant asked, and the court gave, a number of instructions, one of which we here copy. It is as follows.

"5th. You are instructed that, in order to entitle the plaintiff to recover in this case, he must have satisfied you by a preponderance of proof, not only that the defendant's bridge and approaches caused the overflow and damage complained of, but also that in the construction of the same the defendant was guilty of some actual wrong or negligence, but for which the obstruction would not have

existed nor the overflow resulted. The defendant had a right to construct the bridge and the approaches across the river at the point named, although in so doing the river was necessarily obstructed to such an extent as to cause gorges and overflow, and in the absence of negligence or want of ordinary skill in so doing, it cannot be held to have done a wrongful or negligent act. In the erection of its bridge, the defendant was bound to have, 1st, a special regard for the permanence and safety of the same as a means for the transportation of persons and property over its line of road, and if, in the exercise of its discretion, the defendant chose to erect this bridge, which is known as a pile and stringer bridge, instead of a bridge of some other kind, as, for instance, a truss bridge, in the belief, with such means of knowledge and in the light of such engineering skill as was then obtainable, that the former more nearly than the latter complied with those conditions, then it was guilty of no wrong or negligence in this respect, although the latter description of bridge, on account of greater length of spans, might have permitted a freer flow and passage of ice and water, and might, therefore, have been less likely to contribute to an overflow of plaintiff's land than the bridge actually built, and under such circumstances the defendant would not be liable, even if it committed an error of judgment in this regard, and if it should now appear that the bridge actually built is not superior in the respect named to the truss or some other kind of a bridge."

We think a fair analysis of this instruction may be said to be that, to entitle plaintiff to recover, he must satisfy the jury by a preponderance of evidence, not only that the structure caused the overflow, but also that in the construction of the same defendant was guilty of some actual wrong or negligence, but for which the obstruction would never have existed. That defendant had the right to construct the bridge and approaches, although in so

34

doing the river was necessarily obstructed to such an extent as to cause a gorge and overflow, and in the absence of negligence or want of ordinary skill in so doing, it could not have been held to have done a wrongful act. That it was bound to have, first, a special regard for the permanence and safety of the structure as a means for the transportation of persons and property over its line of road, and if, in the exercise of its discretion, the defendant chose to erect a pile and stringer bridge, instead of some other kind, as, for instance, a truss bridge, in the belief, with such means of knowledge and in the light of such engineering skill as was then attainable, that the former more nearly than the latter complied with these conditions, then it was guilty of no wrong or negligence in this respect, although another form of bridge, on account of its greater length of spans, might have permitted a freer flow of ice and water and have been less likely to cause or contribute to an overflow of plaintiff's land, etc. In other words, that defendant's first duty in constructing the bridge was to have regard to the permanence and safety of the same as a means of transportation of persons and property over its line of road, and then, if, in the exercise of its discretion as to the character or quality of bridge to be constructed, it should select one which would impede the flow of water and ice to a greater extent than one of another character or quality, even though it might have proven as safe, the defendant would not be liable for this error of judgment.

We not only think this instruction fails to state the law correctly, but that it states it incorrectly. In *O. & R. V. R. R. Co. v. Brown*, 14 Nebraska, 170, a case quite similar to this, and growing out of the construction of the same bridge, Judge COBB, in writing the opinion of the court, says: "It was the duty of the railway company, in planning and constructing its bridge, to bring to their execution the engineering knowledge and skill ordinarily prac-

ticed in such works, and to see to the practical application of such knowledge and skill to the work in hand, among other things, so as to allow of the passage of the water and ice such as is known to pass in the stream annually, or which may reasonably be expected to occur occasionally, without regard to such great or sudden overflows as are often designated as acts of God."

This rule of law was adhered to in the same case, 16 Neb., 166, by Judge MAXWELL, and by Chief Justice COBB, at 168.

In *Brown v. Cayuga & Susquehanna Railroad Company,* 12 N. Y., 486, a case involving principles somewhat like the one at bar, Judge Johnson, in delivering the opinion of the court, says: "This [the legislative authority conferred upon the road to construct the bridge, which is substantially the same as section 86, chapter 16, of the Compiled Statutes] confers upon the company authority to cross a stream with their road, but it would be a great stretch upon the language, and an unwarrantable imputation upon the wisdom and justice of the legislature, to hold that it imparts an authority to cross a stream in such a way as to be a cause of injury to others owning adjoining property. They were bound, in crossing the stream with their road by the same obligation which would have bound a private owner of the land and stream, had he bridged it."

As we understand the rule of law as applicable to the case at bar, the defendant had the right to construct its bridge at the place selected, and in such construction it was bound to so build as to have regard for the permanence and safety of the bridge as a means of transportation of persons and property over its line, and also to so construct its bridge as to avoid injury to adjacent property holders. If one class of bridges was permanent and safe, and its construction would necessarily impede the flow of water and ice, such as is known or reasonably to be expected to pass in the stream, and another class would be safe and would

not impede the flow of water and ice, to the injury of such adjacent property holders, the latter class should be selected. In short, the duty of a railroad company, in the construction of a bridge over such a stream as the Platte river, would be both to the traveling and shipping public, and to the land owners near by. Neither could be sacrificed to the other. Both should be equally protected. This instruction falls far short of stating this rule.

But it is insisted that, even though it be open to the criticism made, yet, taking the whole of the instructions together, the law is correctly stated, as the instructions given by the court upon its own motion were correct, and have not been assailed. This would do, were it not that the instruction assumes to state a rule of law applicable to the whole case, and which might be decisive of it, and not a statement of a portion of the law, which is completed in other instructions. The rule of law adopted by this court is plain and unequivocal, that if an instruction misstates the law, another instruction correctly stating it will not cure the evil, for the reason that the court cannot say which instruction the jury will follow. *Wasson v. Palmer*, 13 Neb., 378. *McPherson v. Wiswell*, 19 Id., 117. *Ballard v. State*, Id., 610.

Upon this question we are cited by defendant in error to *S. C. & P. R. R. Co. v. Finlayson*, 16 Neb., 578. The instruction objected to in that case was, that before plaintiff could recover he must prove certain facts, which were the principal and essential facts in the case, though not all, perhaps. But the court did not say that if those facts were proven a recovery could be had. Hence it was permissible to supplement the instruction with others, until the whole law upon that part of the case was stated. The instruction in this case involves quite a different principle. Here the jury are told that in order to entitle plaintiff to recover he must satisfy them of certain facts, and "under such circumstances the defendant would not be liable, even if it com-

mitted an error of judgment," etc.   This, as we have seen, was not a partial statement of the law, as in the case cited, but a misstatement, as in the case of *Wasson v. Palmer.*

At the time of the gorge and overflow of the river upon plaintiff's farm he had a number of cattle, some of which were fat and ready for market, but, as he stated in his cross-examination, the market was very low at that time and he did not see proper to sell the cattle for the prices which could then be obtained.   It appears from his testimony that his feed yards were not far from the river ; that he had 145 head of beef cattle, and that upon the overflow of his feed yards he removed them to another place, where they became partially surrounded by the water, so that they could not be fed and cared for as before, and that they thereby diminished in value.

The court instructed the jury upon this part of the evidence, as follows :

"16.   If you find that plaintiff's fat or beef cattle were in reasonably good and proper condition for market at the time of the overflow, then it was his duty to market said cattle, or such of them as were in condition to market, providing he could with reasonable expenditure of labor and money have marketed them.   And the defendant, in that case, would not be liable for subsequent loss or depreciation in the value thereof."

The giving of this instruction is assigned for error.   It was, no doubt, suggested by the well-established rule, that where a loss is impending, that it is the duty of the person upon whom the loss may fall to exercise care, in order that the injury may not be unnecessarily increased, and, perhaps, upon the suggestion of contributory negligence on the part of plaintiff in not selling the cattle and realizing as much out of them as the market would afford.

We doubt this instruction being correct, when applied to this kind of a case.   Plaintiff had the right to select his own time in which to sell.   Had he placed the cattle

upon the market at that time, in consequence of the over-flow, we know of no rule by which he could recover whatever damage he might have sustained by selling upon a poor market, had the market become better. It was his duty to take such care of his stock as would make the loss as light as possible, perhaps, upon whoever it might fall. But it cannot be said that it was his duty to place his cattle upon a poor market, when, in his judgment, the market would be better in a short time. He had a right to exercise his own judgment and discretion in that matter, but he would have no right to allow his cattle to depreciate, starve, be drowned, or perish from any other cause which he could have avoided. This, we think, is the full extent of the rule. In our opinion, the instruction should not have been given.

An additional motion for a new trial was filed by plaintiff, alleging various grounds therefor, but which it is not deemed necessary to notice at length. There are some affidavits produced which tend to show misconduct on the part of some of the jurors, and that some person, whose name need not be here given, sought and solicited other persons to interfere with the deliberations of the jury, and by criminal means, perhaps, prevent a verdict from being rendered in favor of plaintiff.

While the trial court should make a special effort to protect the purity of jury trials, by the infliction of heavy penalties upon persons who would even make an effort to contaminate verdicts by bribery or other improper means, and if necessary grant a new trial, yet there is no direct proof that defendant was a party to any transactions detailed in the affidavits. And there is positive testimony that defendant's counsel, who conducted the trial, and whose integrity is unimpeachable, knew nothing of what was alleged to have occurred. It is, therefore, deemed unnecessary to examine the question further.

The judgment of the district court will be reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.