CENTRAL TRUST CO. OF NEW YORK v. WABASH, ST. L. & P. RY. CO.,
(HANES et al., Interveners.)

(Circuit Court, D. Indiana. September 15, 1893.)

No. 7,935.

1. WATER COURSES—OBSTRUCTION BY RAILROAD EMBANKMENT—VIS MAJOR.
    In 1855 or 1856 a railway company constructed an embankment, with a substantial stone culvert, over a stream dry at times in summer, but at times of heavy rains discharging a large quantity of water. In 1876 the railway was sold under foreclosure to another company, which in 1877, consolidating, formed the defendant company. Subsequently one of the intervening petitioners erected a mill above, and the other placed a lumber yard below, the embankment. On several occasions the capacity of the culvert was overtaxed for a short time, but in May, 1886, in consequence of a heavy rain storm following a cyclone, the water backed up and flooded the mill, and in July, 1888, as the result of unusual, extraordinary, and unprecedented rainfalls, the embankment broke, the mill was again flooded, and the lumber and lumber yard destroyed. *Held* that, as the causes of the injuries complained of were such as could not be anticipated or guarded against by the exercise of ordinary and reasonable foresight, care, and skill, the defendant was not liable.

2. SAME—CONTRIBUTORY NEGLIGENCE.
    The conduct of the petitioners in constructing the mill, and placing the lumber yard where, if the culvert and embankment were insufficient, injury would certainly result, should be considered in determining the responsibility of defendant.

3. SAME—CONTINUING NUISANCE.
    The mere continuance of the culvert and embankment was insufficient to charge the defendant with liability, in the absence of knowledge or notice that they constituted a nuisance.

4. APPEAL—REVIEW OF FINDING ON CONFLICTING EVIDENCE.

The court refused to disturb the master's finding on conflicting evidence that the rainfalls and floods were unprecedented, as a careful study of the testimony failed to create such a clear and abiding conviction as would justify a modification or setting aside the report.

5. SAME—SUFFICIENCY OF EXCEPTIONS.

Exceptions to a master's report, which distinctly point out the findings of fact and conclusions of law excepted to, are sufficient to present such findings and conclusions for review, where the evidence accompanies the report, though such exceptions may be inartistically drawn. Story v. Livingston, 13 Pet. 359, followed.

6. SAME—AWARDING JUDGMENT WITHOUT REGARD TO EXCEPTIONS.

If upon facts to which no exceptions have been filed either party would be entitled to judgment without regard to the findings excepted to, the exceptions may be disregarded or overruled, and judgment awarded upon the undisputed findings of fact.

In Equity. Petitions by Hanes & Porch and by A. R. Colburn, interveners, against John McNulta, receiver of the Wabash, St. Louis & Pacific Railway Company, appointed in an action by the Central Trust Company of New York against said railway company, claiming damages for injuries sustained by a flood caused by an alleged insufficient culvert.

J. McCabe & Son, for petitioners.
Stuart Bros., for defendant.

BAKER, District Judge. The intervening petitioners Hanes & Porch claim that they were damaged by a flood which, by reason of an insufficient culvert, caused such an accumulation of water as to submerge and injure their flour mill and property situated on the up-stream side of the railway. The intervening petitioner A. R. Colburn claims to have been damaged by the insufficiency of a culvert under the railway, which caused such an accumulation of water as to wash away the embankment, and to damage and destroy his lumber and lumber yard situated on the down-stream side of the railway. These petitions were referred to the master to hear the evidence, and to report his findings of fact and conclusions of law thereon. The master, after hearing the evidence and the arguments of counsel, filed his report containing his findings of fact and conclusions of law thereon, and recommending that both claims be disallowed.

The facts found and reported are, in substance, as follows: The embankment and culvert were built by the Toledo, Wabash & Western Railway Company in 1855 or 1856, where the railway crosses a small stream called the "Fall Branch," which runs through the town of Williamsport, Ind. The embankment is about 20 feet high above the bed of the stream. The culvert is arched, and built of stone, in a substantial manner. The stream is dry during the summer, when there are no rains. In times of heavy rains it discharges a good deal of water, draining several square miles of rolling land. Hanes & Porch are the owners of a mill on the west side of the railway. Colburn owned a lumber yard, which was on the west branch of Fall branch, east of the railway, and under its

embankment. Fall branch passed under the embankment, through a large culvert, a short distance southwest of the mill and lumber yard. The top of the arch of the culvert was $8\frac{3}{4}$ inches lower than the engine room floor in Hanes & Porch's mill. In May, 1886, there was a heavy rainfall. The water of Fall branch, not finding a sufficient outlet through the culvert, backed up, and flooded the mill of Hanes & Porch. The backwater damaged the mill, machinery, engine, boiler, and other property of Hanes & Porch to the extent of $600. In July, 1888, there was another flood, and the backwater again damaged the mill and personal property of Hanes & Porch to the extent of $700. This last flood broke the railway embankment opposite the lumber yard of the intervener Colburn, and swept away a large quantity of lumber. Colburn was thereby damaged to the extent of $5,000. The mill of Hanes & Porch was erected in 1879. The culvert is what is called by engineers a "full center-arched culvert," of $9\frac{1}{2}$ feet diameter, with walls 4 feet high under it, making an effective water way of about 73 feet. The culvert and embankment were built by the Toledo, Wabash & Western Railway, which was sold under foreclosure of a mortgage in 1876, by decrees of the United States circuit courts of Illinois, Indiana, and Ohio. The purchasers organized as the Wabash Railway Company in 1877, and that company was consolidated with the St. Louis, Kansas City & Northern Railway Company, and formed the Wabash, St. Louis & Pacific Railway Company, and the receiver here is the receiver of that company.

During 36 years that have elapsed since the building of the embankment and culvert in question, the waters of Fall branch have been backed up by the embankment on two occasions in such a way as to inflict serious damage. On several occasions the capacity of the culvert has been overtaxed for a short time, but, with the exceptions of the floods in May, 1886, and in July, 1888, no serious damage was done. While there is some conflict in the evidence, the receiver has shown by a clear preponderance of the evidence that the flood of May, 1886, following in the path of a cyclone of the day previous, and the flood of July, 1888, resulted from unusual, extraordinary, and unprecedented rainfalls. The fact that the interveners located the mill where they did 30 years after the railway embankment and culvert were built, with full knowledge, or with abundant opportunities for knowing, the extent of country drained by Fall branch, and the effect of ordinarily heavy rains upon it, shows that they at least supposed then, as the builders of the railway supposed, that the culvert was sufficient. Upon these facts the master found and reported that the receiver was not liable for the damages suffered by the interveners Hanes & Porch in May, 1886, and in July, 1888, nor for the damages sustained by the intervener Colburn in July, 1888.

To this report and finding, the interveners Hanes & Porch filed exceptions as follows: (1) The master has not correctly recited in his report the facts established by the evidence he reports, wherein he says that "during 36 years since the building of the em-

bankment and culvert in question the waters of Fall branch have been backed up on two occasions." The evidence reported by him shows, on the contrary, that it was backed up very many times more than "two occasions" during such period, and this without any conflict in the evidence. (2) For that what the master terms in said report "the floods of 1886 and 1888," and which he reports resulted from unusual, extraordinary, and unprecedented rainfalls, is not sustained by, and is contrary to, the evidence which he reports. Said rains were not unprecedented, as said evidence shows. (3) For that the finding upon the foregoing ground that the receiver is not liable for the damages, to wit, $1,300, which he correctly finds Hanes & Porch sustained by the flooding of their mill on said two occasions, is contrary to equity, and contrary to law and the evidence. (4) For that the master very erroneously finds by way of recital at the conclusion of said report that Hanes & Porch located their mill 30 years after the embankment and culvert were built, with full knowledge, or abundant opportunities for knowing, the extent of country drained, and the effect of ordinarily heavy rains. It shows, says said report, that they supposed then, as the builders of the railway supposed 30 years before, that the culvert was sufficient. (5) They except to the finding of the master that the flood which occasioned the injuries to petitioners was extraordinary, and the act of God. (6) They except to the conclusion that the injuries to petitioners were caused by the act of God. (7) They except to the finding that the petitioners were guilty of contributory negligence. (8) They except to the conclusion that the claims of petitioners be disallowed. The exceptions filed by the intervener Colburn are substantially a duplicate of the above.

Counsel for the receiver insist that the exceptions are not sufficiently formal and specific to authorize or require the court to review the findings of fact and conclusions of law reported by the master.

In my opinion, the exceptions are sufficient in form and substance to present for review the findings of fact and conclusions of law contained in the master's report. The report is accompanied by all the evidence on which the findings of the master are based for the very purpose of enabling the court to re-examine the questions of fact, as well as of law, involved in the case. In Foster v. Goddard, 1 Black, 506, where the exceptions were certainly no more formal and precise than those filed in this case, the court held them sufficient to bring up for examination all questions of fact and law arising upon the report of the master. The court says:

"All that is necessary is that the exception should distinctly point out the finding and conclusion of the master which it seeks to reverse. Having done so, it brings up for examination all questions of fact and law arising from the report of the master relative to that subject. The exceptions in this case are sufficiently full. They are in accordance with the experience of each member of the court in the administration of equity jurisprudence elsewhere."

While the exceptions are not artistically drawn, I think they are sufficient to raise the questions of law and fact argued by counsel for the exceptants. Story v. Livingston, 13 Pet. 359; 14 Amer. & Eng. Enc. Law, 947.

It is contended by counsel for the exceptants that the finding of the master that the injuries complained of resulted from unusual, extraordinary, and unprecedented rainfalls, without negligence on the part of the railway company or its receiver, is contrary to the evidence. This contention is met by counsel for the receiver with the assertion that the evidence touching the character of the rainfalls is conflicting, and in case of such conflict that the court cannot, or rather ought not to, review the evidence, and find the fact otherwise than reported by the master, even if the court should be of the opinion that the master's finding was contrary to the clear weight of the evidence. The conclusions of the master, depending on the weighing of conflicting testimony, have every reasonable presumption in their favor, and are not to be set aside or modified unless there clearly appears to have been error or mistake on his part. Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. Rep. 177; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. Rep. 894; Paddock v. Insurance Co., 104 Mass. 521; Richards v. Todd, 127 Mass. 167. The finding of facts by the master will be regarded as prima facie correct, and will not be set aside or modified unless it clearly appears from the evidence reported that there has been a material error or mistake made by him. Medsker v. Bonebrake, 108 U. S. 66, 2 Sup. Ct. Rep. 351. The finding need not be wholly unsupported by the evidence to justify the court in modifying or setting aside his report. If the great preponderance of the evidence is in conflict with his finding, it ought not to be accepted by the court as binding upon it. His report, however, ought not to be modified or set aside for light or trivial reasons, nor unless, upon a careful review of the testimony, the court feels a clear and abiding conviction that some prejudicial error or mistake has been committed. After a careful study of the testimony, I am in doubt whether the master ought to have found that the rainfalls and floods in question were unprecedented, yet I do not feel such a clear and abiding conviction that he has fallen into error as would justify me in modifying or setting aside his report. He saw the witnesses face to face, he heard them testify, and he had an opportunity to form a more accurate judgment than I can from the testimony reported of their intelligence and candor, and their knowledge of the matters about which they testified. The master's finding that the rainfalls and floods resulting in the damages complained of were unusual and extraordinary is unquestioned.

It is, however, insisted that the receiver is responsible for damages from floods occasioned by unusual and extraordinary rainfalls, because they might have been foreseen and guarded against by the exercise of ordinary and reasonable foresight, care, and skill in the construction of a sufficient culvert and embankment.

A railroad company, acting in pursuance of legislative authority, is only required to exercise reasonable diligence and precaution in constructing passageways for the water through its bridges and embankments, and is entitled to select a safe and massive structure, in preference to a lighter one, which would less obstruct the water. It is not liable to an action for damages if it fails to construct a culvert or bridge so as to pass extraordinary floods. Bellinger v. Railroad Co., 23 N. Y. 42; McCleneghan v. Railroad Co., 25 Neb. 523, 41 N. W. Rep. 350; Railway Co. v. Gilleland, 56 Pa. St. 445; Baltimore & O. R. Co. v. Sulphur Spring Independent School-Dist., 96 Pa. St. 65; Sullens v. Railway Co., 74 Iowa, 659, 38 N. W. Rep. 545; Moore v. Railway Co., 75 Iowa, 263, 39 N. W. Rep. 390; Noe v. Railway Co., 76 Iowa, 360, 41 N. W. Rep. 42; Railway Co. v. Schaffer, 26 Ill. App. 280; Banking Co. v. Kent, 84 Ga. 351, 10 S. E. Rep. 965; Railway Co. v. Holliday, 65 Tex. 512; Railway Co. v. Pomeroy, 67 Tex. 498, 3 S. W. Rep. 722; Mills v. Railway Co., 13 S. C. 97; Railway Co. v. Adamson, 114 Ind. 282, 15 N. E. Rep. 5; Gray v. Harris, 107 Mass. 492; Mayor, etc., v. Bailey, 2 Denio, 433; Bailey v. New York, 3 Hill, 531. If, after all precautions have been made, excluding the idea of negligence, the overwhelming power which is technically called the "act of God" intervenes and works injury, the party is not responsible. It was so held where, after one had collected large pools of water on his land, a sudden and extraordinary rainfall, amounting to vis major, swelled the feeding stream, and swept away the embankments, resulting in damage to another. Bish. Non-Cont. Law, § 841; Nichols v. Marsland, L. R. 10 Exch. 255; Railway Co. v. Carvatenagarum, 9 Moak, Eng. R. 289. In Railway Co v. Carvatenagarum, 9 Moak, Eng. R. 289, it was held by the judges of the privy council that where it is the duty of the zemindar to maintain the tanks on his zemindary, which are a part of a national system of irrigation, recognized by the laws of India as essential to the welfare of the inhabitants, and the banks of a tank are washed away by an extraordinary flood without negligence on his part, he is not responsible for any damage occasioned by the overflow of the water. The court, distinguishing this case from Rylands v. Fletcher, infra, were of the opinion that the storing of the water in tanks for the purposes of irrigation was a lawful use, and, in such case, that the law only imposed upon the zemindar the duty of reasonable care and diligence in the construction and maintenance of the tanks; and, if the banks of a tank were washed away by an extraordinary flood, without concurring negligence, no right of action accrued to another who suffered damages occasioned thereby. The character of the storm causing the accumulation of water which breached the banks of the tank is thus described in the findings of the trial court:

"It is clearly proved that for three or four days before the bursting of the tanks there had been heavy rains, and for seventeen or eighteen hours before the accident there was a tremendous downpour of rain. Some of the witnesses said that they had not known such a fall of rain in twenty

years, and the plaintiff's third witness admitted from the time the breaches occurred until the Sunday before his examination, he had never seen such a downpour for a period of nearly five years."

On this state of facts it was held to have been such an extraordinary flood that the law would not charge the zemindar with negligence in failing to foresee and guard against it.

In the case of Rylands v. Fletcher, L. R. 3 H. L. 330, referred to, supra, the plaintiffs, owners of a mine, sued for damages the defendants, owners of some adjacent land, who had constructed a reservoir on their land for the purpose of working a mill, from which reservoir water flowed through disused mining works into the plaintiffs' mine, and flooded it. It was held by the exchequer chamber and by the house of lords that the plaintiffs were entitled to damages against the defendant. The principle on which the judgment was rested is thus stated by Lord Cranworth:

"If a person brings and accumulates on his land anything, which, if it should escape, may cause damage to his neighbor, he does so at his peril. If it does escape, and cause damage, he is responsible, however careful he may have been, and whatever precaution he may have taken to prevent the damage; and the doctrine is founded in good sense, for when one person, in managing his own affairs, causes, however innocently, damage to another, it is obviously only just that he should be the party to suffer. He is bound 'sic uti suo ut non laedat alienum.'"

As applied to water, the doctrine of this case has not passed unchallenged. Cooley. J., in Upjohn v. Board, 46 Mich. 542, 549, 9 N. W. Rep. 845, pointedly observes:

"If withdrawing the water from one's well by an excavation on adjoining lands will give no right of action, it is difficult to understand how corrupting its waters by a proper use of the adjoining premises can be actionable, when there is no actual intent to injure and no negligence. The one act destroys the well, and the other does no more; the injury is the same in kind and degree in the two cases."

But, in any event, the principle that a man, in exercising a right which belongs to him, may be liable, without negligence, for an injury done to another person, has been held inapplicable to rights conferred by statute. This distinction was acted upon in Vaughan v. Railway Co., 5 Hurl. & N. 679, where it was held by the exchequer chamber that a railway company was not responsible for damage from fire kindled by sparks from its locomotive engine, in the absence of negligence, because it was authorized to use locomotive engines by statute. Chief Justice Cockburn observes:

"Where the legislature has sanctioned and authorized the use of a particular thing, and it is used for the purpose for which it was authorized, and every precaution has been observed to prevent injury, the sanction of the legislature carries with it this consequence: that, if damages result from the use of such a thing, independently of negligence, the person using it is not responsible."

On the same principle, in the case of Blyth v. Water Works Co., 25 Law J. Exch. 212, it was decided that a waterworks company laying down pipes by a statutory power was not liable for damages occasioned by water escaping in consequence of a fire plug being forced out of its place by a frost of unusual severity. On the other hand, in Jones v. Railway Co., L. R. 3 Q. B. 733, it was held that a

railway company which had not express statutory power to use locomotive engines was liable for damage done by fire proceeding from them, though negligence on the part of the company was negatived. The culvert and embankment in question were built by virtue of statutory power, so that the doctrine of Rylands v. Fletcher, and other cases following, is inapplicable to the present case.

The rule is perfectly well settled in this country that the owner of a dam or embankment must use ordinary and reasonable foresight, care, and skill in so constructing and maintaining it that it will not be the means of injuring another, either above or below, by throwing the water back, or being incapable of resisting it in times of usual, ordinary, and expected floods; but his liability extends no further, and he is not held responsible for inevitable accidents, nor for injuries occasioned by extraordinary floods, which could not be anticipated or guarded against by the exercise of ordinary and reasonable foresight, care, and skill. Lapham v. Curtis, 5 Vt. 371; Lehigh Bridge Co. v. Lehigh Coal & Nav. Co., 4 Rawle, 9; Bell v. McClintock, 9 Watts, 119; Navigation Co. v. Coon, 6 Pa. St. 379; Lacy v. Arnett, 33 Pa. St. 169; Casebeer v. Mowry, 55 Pa. St. 419; Knoll v. Light, 76 Pa. St. 268; Mayor, etc., v. Bailey, 2 Denio, 433; Inhabitants of Shrewsbury v. Smith, 12 Cush. 177; Inhabitants of Wendell v. Pratt, 12 Allen, 464; Smith v. Canal Co., 2 Allen, 355; Gray v. Harris, 107 Mass. 492; Inhabitants of China v. Southwick, 12 Me. 238; Hoffman v. Water Co., 10 Cal. 413; Everett v. Tunnel Co., 23 Cal. 225; Proctor v. Jennings, 6 Nev. 83; Ames v. Manufacturing Co., 27 Minn. 245, 6 N. W. Rep. 787; Hydraulic Co. v. Boyer, 67 Ind. 236.

There is no liability when a suitable culvert or embankment, which has been properly constructed and kept in repair, breaks, or proves otherwise insufficient, and causes injury to lands above or below, because of an extraordinary flood or other act of God, or when, in consequence of great and exceptional floods, without concurring negligence, it injures a landowner above or below, unless liability may arise from the terms of a statute by which the work is expressly authorized. Livingston v. Adams, 8 Cow. 175; Noyes v. Shepherd, 30 Me. 173; Pollett v. Long, 56 N. Y. 200; Tenney v. Ditch Co., 7 Cal. 335; Campbell v. Mining Co., 35 Cal. 683; Wolf v. Water Co., 10 Cal. 541; Frye v. Moor, 53 Me. 583; Fraler v. Water Co., 12 Cal. 555; Weiderkind v. Water Co., 65 Cal. 431, 4 Pac. Rep. 415; Wright v. Holbrook, 52 N. H. 120; Washburn v. Gilman, 64 Me. 163; McArthur v. Canal Co., 34 Wis. 139. The owner of a culvert or embankment erected on his own land is responsible for all injury done by it to the land or property of his neighbor arising from the usual and ordinary and expected freshets occurring in the stream; but he is not responsible for damage occasioned by those great and sudden visitations of wind or water or other convulsions of nature, whose occurrence cannot be anticipated, and whose devastating force cannot be guarded against by the exercise of ordinary foresight, care, and skill. McCoy v. Danley, 20 Pa. St. 85, 57 Amer. Dec. 680, and note; Rodgers v. Railroad Co., 67 Cal. 607, 8 Pac.

Rep. 377; Young v. Leedom, 67 Pa. St. 351; Moore v. City of Los Angeles, 72 Cal. 287, 13 Pac. Rep. 855; Brown v. Atlanta, 66 Ga. 71; Verran v. Baird, 150 Mass. 141, 22 N. E. Rep. 630; Rich v. Improvement Co., 56 Wis. 287, 14 N. W. Rep. 191; Railroad Co. v. Reeves, 10 Wall. 176.   The measure of diligence required by the law is that the character and size of the stream, the extent and situation of the adjoining country drained by it, and the nature of the rainfalls and floods affecting it shall be ascertained and provided for so far as the exercise of ordinary foresight, care, and skill can accomplish them.   Ordinary care and skill does not require the occurrence of cyclones, cloud-bursts, or earthquakes to be foreseen or guarded against, though it is known that they have many times happened, and that they will certainly recur.   In every case of injury by floods it is not so much the question whether like floods have occurred, as it is whether the particular flood was so sudden and overwhelming as to sweep away such structures as prudent and skillful men exercising ordinary care and foresight have found by experience to be sufficient to resist all such floods as are liable to occur.   The culvert and embankment in question had stood for more than 30 years, without causing serious injury, or causing complaint.   The conduct of these claimants, the one in building his mill above, and the other in placing his lumber yard below, the embankment, when, if the culvert and embankment were insufficient, they were certain to suffer damage, is entitled to some weight in determining the responsibility of the receiver.

But it is said if the embankment had not been raised, or if the culvert had been constructed of the same width as the low land through which the stream flowed, the rainfall and consequent flood might not have occasioned the damage complained of.   The embankment and culvert may have been one of a series of causes to which the injury may have been indirectly ascribed.   Their connection, however, was fortuitous, and resulted from an extraordinary and unusual state of things.   Neither the rainfall nor the cyclone nor the cloud-burst was caused by the embankment or culvert.   These had continued unimpaired without causing serious injury for more than 30 years preceding the accident.   Such tremendous and extraordinary downpours of rain as resulted in the washing away of the embankment, with the consequent damage, could not have been foreseen or guarded against by the exercise of ordinary foresight, care, and skill.   It would be carrying the doctrine of liability to a most unreasonable length to run up a succession of causes, and hold each responsible for what followed, especially where the connection was casual and unexpected, and where that which is attempted to be charged was in itself innocent and lawful.   The law affords no encouragement to speculations of this sort.   It rests upon the maxim, "causa proxima non remota spectatur."

Another reason is urged why judgment ought to be entered for the receiver, as recommended by the master, even if his finding should be held to be erroneous on the question hereinbefore dis-

cussed. The master finds and reports that the embankment and culvert were built by the Toledo, Wabash & Western Railway in 1855 or 1856; that this railway was sold by decree and order of the United States circuit courts of Illinois, Indiana, and Ohio to certain purchasers, who organized the railway so purchased as the Wabash Railway, and that that company consolidated with the St. Louis, Kansas City & Northern Railway Company, and formed the Wabash, St. Louis & Pacific Railway Company, of which last-named company the respondent herein is the receiver. Notwithstanding exceptions have been filed to portions of the master's report, still if, upon the facts to which no exceptions have been filed either party would be entitled to judgment without regard to the findings excepted to, the exceptions ought to be disregarded or overruled, and judgment awarded on the undisputed findings of fact. Is the receiver of the Wabash, St. Louis & Pacific Railway Company liable to respond to the claimants for damages resulting from the construction of an insufficient culvert and embankment by the Toledo, Wabash & Western Railway Company, a remote owner of the railway? Assuming, without deciding, that the receiver is answerable for whatever damages the Wabash, St. Louis & Pacific Railway Company would have been liable if there had been no receivership, the question still recurs, can the railway be held responsible for damages resulting from the failure of its remote grantor to construct a sufficient embankment and culvert over Fall branch? The nuisance, if there was one, had been erected before the conveyance of the railway to its present owners, by a previous owner, and all that the receiver or the railway he represents has done is merely to continue the culvert and embankment as they were at the time the title was acquired. The subject has been fully considered by the courts both in England and in this country, and, while there is not entire harmony in the views expressed by them, the rule to be deduced from their decisions is that an action on the case for a nuisance lies both against the person who originally committed it and against the person in the occupation or possession of the premises, who suffers it to continue, for the reason that the continuance of that which was originally a nuisance is a new nuisance; but, as the purchaser of land might be subject to great injustice if made responsible for the consequences of a nuisance of which he was ignorant, and for damages which he never intended to occasion or continue, it has been held ever since Penruddock's Case, 5 Coke, 101, that where a party was not the original creator of the nuisance, he must have notice of it, and a request must be made to remove it, before any action can be brought. McDonough v. Gilman, 3 Allen, 264; Woodman v. Tufts, 9 N. H. 88; Noyes v. Stillman, 24 Conn. 15; Conhocton Stone Road v. Railroad Co., 51 N. Y. 573; Pinney v. Berry, 61 Mo. 359; Dickson v. Railroad Co., 71 Mo. 575; Pillsbury v. Moore, 44 Me. 154; Pierson v. Glean, 14 N. J. Law, 36; Carleton v. Redington, 21 N. H. 291; Add. Torts, § 280, p. 242; Wood, Nuis. § 822; Ror. R. R., p. 707; Nichols v.

City of Boston, 98 Mass. 43; West v. Railway Co., 8 Bush, 404, 408; Cooley, Torts, p. 611; Walter v. Commissioners, 35 Md. 385; Dodge v. Stacey, 39 Vt. 558; Thornton v. Smith, 11 Minn. 15, (Gil. 1;) Slight v. Gutzlaff, 35 Wis. 675; Groff v. Ankenbrandt, 124 Ill. 52, 15 N. E. Rep. 40; Ray v. Sellers, 1 Duv. 254; Grigsby v. Water Co., 40 Cal. 396. It therefore follows that the mere continuance of the alleged nuisance on the railway company's land, without any finding of such knowledge or notice of its existence as to charge the company or its receiver with fault for its continuance, is not sufficient to create any right of action against the company or its receiver.

The exceptions will therefore be overruled, and judgment will be entered on the master's report in favor of the receiver and against the exceptants for costs.