FAIRBURY BRICK COMPANY, APPELLEE, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT.

FILED OCTOBER 16, 1907. No. 14,914.

Waters: RAILROAD EMBANKMENTS: NEGLIGENCE. Although a rainfall may be more than ordinary, yet, if it be such as has occasionally occurred at irregular intervals, it is to be foreseen that it may occur again; and a party engaged in a public work, the construction of which involves the change or restraint of the flow of water in a natural channel, is guilty of negligence if he

fails to make reasonable provision for the consequences that will result from such extraordinary rainfalls as experience shows are likely to occur.

APPEAL from the district court for Jefferson county: WILLIAM H. KELLIGAR, JUDGE. *Affirmed.*

*M. A. Low, W. D. McHugh* and *Hazlett & Jack,* for appellant.

*Heasty & Barnes, contra.*

CALKINS, C.

In 1887 the defendant constructed its railway across the valley of the Little Blue river at a point where the first bottom is from one-half to three-quarters of a mile wide. It built a bridge across the river proper, with approaches consisting of earthen embankments and open trestle work, making in the aggregate a waterway of about 950 feet. In 1895 the defendant filled up these trestles with solid embankments of earth, reducing the waterway across the bottom by from 350 to 400 feet. In 1902, during a period of high water, one of these embankments was washed out; but it was again filled up, to be again carried away in 1903 at the time of the high water which caused the damage which is the subject of this action. The plaintiff was the proprietor of a brick yard situated in the valley a short distance above the defendant's railway. About the 1st day of June, 1903, heavy rains had fallen along the river, causing it to rise above its banks, and, the flood waters being dammed by the embankments of the defendant's railroad, backed up and submerged the plaintiff's yards, damaging and destroying its machinery, tools and partially manufactured products. This action was brought against the defendant to recover the damages so suffered, on the ground that the defendant did not use reasonable and proper care in the construction and maintenance of its embankments, having insufficient openings to accommodate the stream

in times of high water. There was a trial to a jury, and a verdict for the plaintiff. From the judgment rendered upon this verdict the defendant appeals.

The sole question in the case is how far a party, in the execution of a public work which crosses a watercourse and necessarily interferes with the natural drainage, is bound to take notice of and provide for those storms which, although unusual, have occasionally occurred at rare and irregular intervals within the memory of living men. It appears that, during the 18 years next prior to the construction of defendant's railway, there had occurred floods at the place in question in the years 1869, 1875 and 1881, practically as high as the one which did the damage complained of. But the defendant claims that these were extraordinary, and that it was not, therefore, required to take notice of and provide for such floods. At the request of the defendant the court gave to the jury 11 different instructions, in each of which the jury were told that the defendant would not be liable for damages caused by water backed up by its embankment, if the flood was so large and unusual as not reasonably to be expected to pass in said stream; and in one of these instructions the jury were told that, to constitute a flood so large and unusual as not to be reasonably expected, it was not necessary to show that such flood had never occurred theretofore in history. It is not complained that this view of the case was not presented to the jury with sufficient iteration; but, in the second instruction given to the jury at the request of the plaintiff, the jury were told that it was the duty of the defendant company to exercise due care in the construction and maintenance of its embankments with reference to such extraordinary floods as had occurred within the memory of men then living, and, as far as engineering skill and foresight could reasonably anticipate, to avoid damage to property above such embankments by a recurrence of such floods; in the third instruction given at the request of the plaintiff the same doctrine was practically reiterated; and in the

fourth the jury were told: "By the term 'act of God' is meant those events and accidents which proceed from natural causes, and cannot be anticipated and guarded against, or resisted, such as unprecedented freshets, earthquakes, cyclones and lightning. For injuries occurring by any of these means there is no liability, providing reasonable and ordinary care has been exercised by defendant to guard against such injuries." Of all these instructions the defendant complains and insists that the case should be reversed on account of their having been submitted to the jury.

This question is not a new one. In the case of *Mayor v. Bailey*, 2 Denio (N. Y.), 433, the court by Chancellor Wallworth said: "The degree of care which a party who constructs a dam across a stream is bound to use is in proportion to the extent of the injury which will be likely to result to third persons, provided it should prove insufficient. It is not enough that the dam is sufficient to resist ordinary floods. If the stream is occasionally subject to great freshets, those must likewise be guarded against." And again: "Although the flood of 1841 was not an ordinary one, I think the evidence of the plaintiffs was sufficient to authorize the jury to find that it was one of those occasional floods to which the Croton had sometimes been subject, and which should therefore have been provided against by those whose duty it was to guard against the probable consequences of such a flood." This case was followed in *Ohio & M. R. Co. v. Ramey*, 139 Ill. 9, 32 Am. St. Rep. 176, in which the court say: "The principle, clearly, is that, although a rainfall may be more than ordinary, yet if it be such as has occasionally occurred, and, it may be, at irregular intervals, it is to be foreseen that it will occur again, and it is the duty of those changing or restraining the flow of water to provide against the consequences that will result from it. It is within the knowledge of all who have long resided in this state that our streams are occasionally subject, after intervals which are sometimes of shorter

and at other times of longer duration, to great floods, occasioned by very heavy rainfalls, and their heights are known by those who have felt interested in them. Such rainfalls were not usual and ordinary, but they were unusual and beyond ordinary—*i. e.*, they were extraordinary; and yet it is just as certain that like rainfalls will occur in the future as it is that the same laws of nature by which they are produced, and the same conditions to be affected by those laws, will continue to exist in the future as they have in the past. Though of rare occurrence, such rainfalls are not phenomenal, and therefore beyond reasonable anticipation, and it is hence but the prudence that a discreet man would exercise in his own affairs to provide against injury from them. The question, then, is not whether appellant has sufficiently provided for the escape of the water of ordinary floods, but, has it provided for the escape of the water of such unusual or extraordinary floods as it should have anticipated would occasionally occur in the future, because they had occasionally occurred after intervals, though of irregular duration in the past." This doctrine is also supported by the following cases: *Gulf, C. & S. F. R. Co. v. Pomeroy,* 67 Tex. 498, 3 S. W. 722; *Gray v. Harris,* 107 Mass. 492; *New York, C. & St. L. R. Co. v. Hamlet Hay Co.,* 149 Ind. 344; *Columbus & W. R. Co. v. Bridges,* 86 Ala. 448, 11 Am. St. Rep. 58. And, while the question has not been so precisely presented in our own court, we think it is within the rule adopted in the case of the *Omaha & R. V. R. Co. v. Brown,* 14 Neb. 170, where it was said by COBB, J.: "It was the duty of the railway company, in planning and constructing its bridge, to bring to their execution the engineering knowledge and skill ordinarily practiced in such works, and to see to the practical application of such knowledge and skill to the work in hand, among other things, so as to allow of the passage of water and ice, such as is known to pass in the stream annually, *or which may reasonably be expected to occur occasionally,* without regard to such

great or sudden overflows as are often designated as acts of God." The words in italics cover the same grounds as the cases from other states to which we have referred. The court adhered to this rule in *Omaha & R. V. R. Co. v. Brown*, 16 Neb. 161; *McCleneghan v. Omaha & R. V. R. Co.*, 25 Neb. 523; *Chicago, R. I. & P. R. Co. v. Buel*, 76 Neb. 420.

The defendant claims that its position is sustained by the case of *Central Trust Co. v. Wabash, St. L. & P. R. Co.*, 57 Fed. 441, and that of the *Pittsburg, Ft. W. & C. R. Co. v. Gilleland*, 56 Pa. St. 445, 94 Am. Dec. 97. In the former case the culvert, which it was claimed was of insufficient size, had been built in 1856, and had proved sufficient until the flood in May, 1886, following a cyclone of the day preceding, and another flood in July, 1888, resulting from unusual, extraordinary and unprecedented rainfalls. In this case there was no question of conditions before the construction of the culvert, the first serious flood occurring 30 years after it was built. The case cannot, therefore, be of much weight in solving the question of whether the defendant should, in constructing its railway, have considered the previous floods of 1869, 1875 and 1881, especially as the decision of the case is put upon the ground that the receiver, who then had charge of the railway company, was not liable for maintaining the culvert as a nuisance, the receiver not having any notice of its insufficient character. The case of the *Pittsburg, Ft. W. & C. R. Co. v. Gilleland, supra,* was another where a culvert proved of insufficient capacity. It was constructed in 1849, and the plaintiff gave evidence of floods, one in June and another in July, 1865, the water of which the culvert was insufficient to carry away. There was also evidence of another flood in 1866. The trial judge, in an instruction which conceded the extraordinary character of the floods, submitted the question to the jury as to whether the defendants should, after the first and second floods, have altered their culvert by enlarging its capacity. The supreme court held that this

was error, saying that if all the floods were extraordinary, as the instruction concedes, the surprise at the second and third could not have been less than at the first, and it was still more surprising that they should come in this rapid succession. There is nothing in the reported case to inform us why the floods were considered extraordinary, and we must conclude that it was on account of their infrequency. The learned judge does not tell us how many times a phenomenon, regarded as extraordinary because of its infrequency, must be repeated in rapid succession in order to become ordinary; and it is not necessary to discuss that question here, for in the case cited there was no question of previous experience. We do not think the latter case in point, and in so far as the same is inconsistent with the doctrine laid down in the cases of the *Mayor v. Bailey, supra,* and *Ohio & M. R. Co. v. Ramey, supra,* we think the latter should prevail. The mere fact that a flood is extraordinary is not sufficient to absolve the defendant from liability. Although a rainfall may be more than ordinary, yet if it be such as has occasionally occurred at irregular intervals it is to be foreseen that it may occur again; and a party engaged in a public work, the construction of which involves the change or restraint of the flow of water in a natural channel, is guilty of negligence if it fails to make reasonable provision for the consequences that will result from such extraordinary rainfalls as experience shows are likely to recur.

It therefore follows that there was no error in the instructions complained of, and we recommend that the judgment of the court below be affirmed.

JACKSON and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.