*/2/2'·ú· /· S*

JOSEPH SUITER, APPELLANT, V. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLEE.

FILED APRIL 24, 1909. No. 15,426.

1. **Trial:** INSTRUCTIONS. An instruction must be pertinent to the evidence as well as relevant to some issue in the case; and, if the evidence does not tend to support an issue presented by the pleadings, that issue should not be submitted in the instructions to the jury.

2. ——: ——. It is not error to refuse to give an instruction, if the proper legal principle therein announced is included by the court in another instruction given to the jury.

3. ——: ——. If the court properly instructs the jury that the burden is on plaintiff to make out his case, but is silent as to the burden resting on defendant to prove an affirmative defense, and plaintiff does not request further instructions on said point, he

waives any error the court may have made in failing to instruct concerning the burden carried by the defense.

4. **Railroads: DRAINS: EVIDENCE.** Where the issue joined relates to the sufficiency of openings in a railway embankment for the escape of flood waters in a creek and its valley, plaintiff's testimony concerning statements made by him to defendant's officers charged with the duty of constructing said embankment, that in his opinion such openings were insufficient, is irrelevant and properly excluded.

5. **Trial: DISCRETION OF COURT.** The court in its discretion may permit jurors to take to the jury room plats and maps properly identified and admitted in evidence.

6. **Appeal: INSTRUCTIONS: HARMLESS ERROR.** Where the court fairly submitted to the jury the issues and the evidence, the judgment will not be reversed for errors in unnecessary instructions given, if from a consideration of the pleadings and all of the evidence it is apparent that the jury was not misled and that the verdict returned is amply supported by the evidence.

APPEAL from the district court for Saline county: LESLIE G. HURD, JUDGE. *Affirmed.*

*L. W. Colby,* for appellant.

*M. A. Low, Hazlett & Jack* and *J. H. Grimm & Son, contra.*

ROOT, J.

Action for damages from flood waters. Defendant prevailed, and plaintiff appeals.

Plaintiff in 1867 entered as a homestead and still owns 160 acres of land in the valley of Turkey creek southeast of, and close to, the city of DeWitt. Turkey creek is about 70 miles in length, flows in a general southeastern course, and joins the Big Blue river about two miles below plaintiff's farm. For about said distance the creek parallels the Blue river, which at said point is about one mile north of Turkey creek. The Burlington railway is between the Blue river and Turkey creek, and follows in a general way the course of said streams. In 1887 defend-

20

ant in constructing its railway from Lincoln to the south-west crossed said streams and bisected plaintiff's land. At the point where the railway crosses said creek the north bank of the stream is the higher, and the land south of said water course is low and flat for over 1,000 feet. Defendant's roadbed is elevated above the bottom land and passes over the Burlington tracks. Said roadbed is about 15 feet above the north and 22 feet higher than the south bank of Turkey creek. When the railway was first constructed, in addition to a bridge over said creek, defendant built an open trestle south of said stream, but in 1898 the trestle was replaced with an embankment of earth, so that the opening through the roadbed for the waters of said creek was limited to 174 feet in width. The distance from the lower girder of the bridge to the bottom of the creek bed is 30 feet. A wide ravine or draw heads many miles northwest of DeWitt, runs through said city in a course parallel with, and north of, Turkey creek, and joins said stream about a quarter of a mile east of defendant's roadbed. Said draw furnishes drainage for surface water, but for a considerable part of the year is dry. At the point where defendant's roadbed crosses the ravine it is 300 feet from bank to bank, but the walls slope gradually downward until they are close together in the bed of the draw. In defendant's first construction an open trestle was built across this ravine, but in 1900 a concrete culvert eight feet square (inside measurement) was placed in the bed of the ravine, and earth filled in so as to make a solid grade for defendant's roadbed. In constructing the railway across Turkey creek defendant excavated the land from the base of the grade to the exterior lines of its right of way on each side of the roadbed, thereby creating a ditch which extends on the west side of the railway from said ravine north to a graded highway which crosses the railway at right angles close to the Blue river. From the ravine the ditch extends south to the Burlington right of way, and from the south side thereof to within 20 feet of the north bank of Turkey

creek. Plaintiff has a private roadway on the north side of said creek and beneath defendant's bridge, and he inserted beneath said road a drainage pipe to carry the water from the ditch aforesaid into Turkey creek. In 1902 and also in 1903 the valley of Turkey creek was flooded, plaintiff's land submerged, and his growing crops destroyed. East of the railway quantities of sand, gravel and flood trash were cast upon and distributed over his pasture and grass land, and in places the fertile soil was washed away. Plaintiff alleges that defendant was negligent in not providing sufficient openings through its roadbed, where the same crosses said ravine and Turkey creek, for the passage of flood waters which were held back by said embankment and diverted through said ditch from the ravine and creek bed onto and over his land. The argument in the brief relates principally to alleged errors in the giving and refusing to give instructions.

1. Complaint is made that the court failed to instruct the jury relative to said ditch. Although this issue is presented by the pleadings, the evidence establishes without contradiction that the water attained a height greater than the top of the banks of Turkey creek and of said ditch, and that the ditch neither caused nor contributed to plaintiff's damages. The court very properly omitted that issue from the instructions. *Burnet v. Cavanagh,* 56 Neb. 190; *Hamilton v. Singer Mfg. Co.,* 54 Ill. 370.

2. The substance of the legal principle properly stated in instruction numbered 3, requested by plaintiff, *i. e.,* that it was the duty of defendant to anticipate and provide sufficient waterways through its roadbed for the passage of the waters that might reasonably be expected to flow down the creek and draw, was included in several instructions given by the court.

3. Instruction numbered 4, requested by plaintiff and assuming to define the term "act of God," was, as plaintiff argues, given in *Fairbury Brick Co. v. Chicago, R. I. & P. R. Co.,* 79 Neb. 854, and not condemned in this

court, but we did not hold that the court would have erred if it had not given that instruction, nor does it follow that it should have been given in the case at bar. The court fully instructed the jury that, if the flood waters which caused plaintiff damage might reasonably have been anticipated by defendant, it was charged in law with the duty of providing for their passage, and if it failed to do so, and thereby plaintiff was damaged, he could recover, and such is the law. *Fairbury Brick Co. v. Chicago, R. I. & P. R. Co., supra.* An abstract definition of the aforesaid term was not necessary, nor the failure to give it prejudicial error.

4. Concerning instruction numbered 3, given by the court relative to the burden of proof, plaintiff insists that, by a plea that the flood waters were caused by an act of God, defendant confessed and tried to avoid, and therefore that the burden was upon it throughout the case, and cites authorities applicable to the destruction of merchandise in the hands of a common carrier. The cases are not analogous. A common carrier, with few exceptions, is an insurer of the safe carriage of freight. If property while in the carrier's possession is damaged, a presumption of negligence arises, and the burden is upon it to bring itself within the exceptions. In the instant case defendant did not insure plaintiff from loss or damage from water, and denied any negligence in the construction of its bridge. The mere fact that plaintiff's land was submerged did not make out his case, but the burden was still upon him to prove negligence as alleged in the petition, and he assumed that burden in the trial of the case. The instruction was correct as far as it went. Plaintiff did not request a more specific instruction than was given upon this branch of the case, and will not be heard to complain in this court. *Lampman v. Van Alstyne,* 94 Wis. 417.

5. Instruction numbered 10, given at defendant's request, is erroneous in submitting for the jurors' consideration the necessity of maintaining a roadbed in safe

condition for the transportation of persons and property. No evidence was introduced on this point.

In instruction numbered 11, the jurors were instructed that, if the flood in question "was of such unusual volume and violence as to surprise cautious and reasonably prudent men, then and in that case the flood is so large and unusual as not to be reasonably expected within the meaning of these instructions." The instruction was unnecessary, and does not meet our approval. Defendant was bound to anticipate, not only ordinary floods, but an occasional extraordinary one. In the 25 years next preceding the construction of the railway there had been three or four extraordinary floods in said valley, one of which nearly, if not completely, equaled the flood of 1902. Reasonably prudent men may have been surprised at the appearance of those freshets. While it may be implied, it is not stated, that the "reasonably prudent men" should have knowledge of the rainfall and extent of the floods in Turkey creek valley. While this instruction should not have been given, we do not think that it misled the jurors. Instruction numbered 17, requested by defendant and given by the court, while not erroneous, was unnecessary. Notwithstanding the errors referred to, we do not think that this case should be reversed. The evidence is undisputed that the flood waters in 1902 and 1903 covered the valley of Turkey creek on each side of defendant's grade. The high water marks on the north and south sides of the valley, both above and below the railway, were established by the testimony of disinterested witnesses. The elevations taken and surveys made prove that, commencing two miles above the railway, the fall to the bridge, using the surface of the water as a base line, was greater than below said grade, although no such disparity existed in the profile of the earth between said points. It also appears without contradiction that on July 9, 1902, the water from Turkey creek swept over the north bank thereof about two miles west of plaintiff's land and came down three feet in depth through the

streets of DeWitt, flowed east and south, and submerged plaintiff's premises. The jury would scarcely be warranted in finding that the flood waters would not have been as high as they were, or that plaintiff's land would not have been submerged, if defendant's roadbed had not been constructed. As to the draw, or so-called "old channel of the Blue," the evidence discloses that water backed up therein from Turkey creek and also flowed back east when the flood came down from the west, but there is not a scintilla of evidence, as we read the record, to establish that the dimensions of said culvert were responsible for any part of plaintiff's damage. The evidence does not disclose that with the recession of the flood the water was held on plaintiff's land west of the grade for a greater length of time than on the east side thereof. The covering of the grass land east of the grade with debris, sand and gravel was an incident of high water which no one could foresee or guard against.

The case was exhaustively tried, and but one complaint is made concerning the admission or rejection of evidence. The court instructed the jury practically as suggested in the instructions submitted by plaintiff that, if defendant had not made provision for the passage of such water as it might reasonably expect would come down the valley and for such freshets, high waters and floods as it should reasonably have anticipated, it would be liable for all damages resulting from such negligence, but that it would not be liable for flood waters that without its fault left the banks of the creek west of DeWitt and flowed down through said town and across plaintiff's property, or for any damages that would have resulted from water if the bridge and grade had not been built. In view of all of the facts and the record, we are constrained to hold that the errors committed were without prejudice to plaintiff. We do not say that, under every possible combination of circumstances that may arise, the embankments, culvert and bridge under consideration will be

found sufficient, but that upon this record the jurors were amply justified in finding for defendant.

6. Plaintiff sought to prove a correspondence with the vice-president of defendant about the time the bridge in question was constructed and the trestle work on the south side of the creek filled in with earth. In plaintiff's letter he informed said officer that in the writer's judgment sufficient way was not being provided for flood waters, and recounts his extensive experience in bridge building and intimate knowledge of the locality and of the valley of Turkey creek. We do not consider this evidence relevant. The issue was not what defendant was informed concerning the bridge or flood waters in the Turkey creek valley, but whether it had provided a sufficient passage for such waters. Defense was not made on the ground that defendant's engineers had inquired from and of, or had received information from, plaintiff or any other old resident in said valley, or from any person or persons concerning the flood waters in said valley, and had relied thereon, but that its provision for flood waters was suitable, and the proffered evidence would neither prove nor disprove that fact.

7. Complaint is made that the jurors were permitted over plaintiff's objections to take to the jury room the plats and maps introduced by plaintiff and defendant in evidence. The plats and the figures thereon were identified and testified to as correct by competent witnesses, the matter was within the discretion of the court, and the consideration of that evidence by the jury is not ground for a reversal of the judgment. *Mercer v. Harris*, 4 Neb. 77.

Upon the entire record we do not find prejudicial error, and the judgment of the district court therefore is

AFFIRMED.

REESE, C. J., dissenting.

I find myself unable to agree to the opinion in this case. Instruction numbered 11, given to the jury at the

request of defendant, referred to in the foregoing opinion, is as follows: "The jury are instructed that to constitute a flood, one which is so large and unusual as not reasonably to be expected, it is not necessary to show that such a flood has never occurred theretofore in the history of Turkey creek, nor is it necessary to show that it was caused by a cloudburst or waterspout. But you are instructed that, if the flood in question was of such unusual volume and violence as to surprise cautious and reasonably prudent men, then and in that case the flood is so large and unusual as not to be reasonably expected within the meaning of these instructions." It is conceded in the majority opinion that this instruction is erroneous. That such is the case must be patent to any legal mind. No argument need be made nor reason given, aside from that stated in the opinion. The material question here is: Was the giving of the instruction prejudicial, or could it reasonably be said to have the effect of misleading the jury? We must remember that all questions of fact were for the consideration of the jury. If all that was necessary for appellee's defense was to prove that the flood was sufficient to "surprise cautious and reasonably prudent men," then we have a new rule to be applied to such occurrences as have heretofore been considered as the act of God. I do not think it is for the court to relieve the instruction of its evil effects by saying that the flood was such as to be characterized as the act of God, and therefore the erroneous instruction could do no harm. Since the question of the extent and character of the flood was for the consideration of the jury, I cannot see how we can hold the instruction as being otherwise than prejudicial.

Instruction numbered 10, given at the request of defendant, is as follows: "The jury are further instructed that, in constructing its railroad across a stream, a railroad company is bound in law not only to provide in its roadbed openings sufficient for the unimpeded passage of all waters known or reasonably to be expected to pass in

said stream at such a point, but it is also bound to so construct its bridge and roadbed as to adequately provide for the permanence and safety of the same as a means of transportation of persons and property over its line. And you are further instructed that the defendant company, in constructing its roadbed over and across Turkey creek at the point in question, was only bound to so construct its roadbed and bridge as to leave sufficient opening for the unimpeded passage of all waters reasonably to be expected to pass in said stream at that point, and it also was bound to so construct its bridge and roadbed as to have the same reasonably permanent and safe as a means of transportation of persons and property. And you are further instructed that the defendant company would have no right, in constructing its bridge and roadbed, to render the same unsafe or dangerous for the transportation of persons and property over its line, in order to provide openings sufficient, not only for the unimpeded passage of waters reasonably to be expected to pass in said stream at said point, but also to permit the unimpeded passage of the waters of all floods so large and unusual as not reasonably to be expected to pass in said stream at said point."

While it might be said that the inclusion of the element of safety to passengers and property in this instruction did not tend to mislead the jury upon any material question involved in the case, yet the inevitable tendency of such an instruction would be to divert the attention of the jury from the real issues in the case, and it should not have been given. The closing portion is specially objectionable, not only on the ground last here stated, but as containing a misstatement of the law. The language falls short of stating the correct rule to be applied to the duty of defendant in protecting the property of plaintiff from high waters. Practically the same language occurs in the third instruction given on defendant's request.

The judgment of the district court should be reversed and the cause remanded for further proceedings.

FAWCETT, J., concurs in the dissent.