URIAH UPJOHN v. THE BOARD OF HEALTH OF THE TOWNSHIP OF RICHLAND ET AL.

*Powers of township boards of health—Injunction against location of burying ground—Pollution of water.*

The court of chancery has an undoubted jurisdiction to enjoin the action of township boards of health in establishing burial places, should they proceed to exercise it illegally or improperly to the injury of others.

But these boards have large discretionary powers, the exercise of which will not be interfered with until a clear case is made out. It must be intended until the contrary is shown that they are acting in good faith and in the line of their duty.

Complainant sought to enjoin the location of a burying ground near his residence, for the reason, among others, that it would destroy his well. *Held*, to be a strong circumstance against his application that he had voluntarily bought and located his residence in the immediate vicinity of a burying ground which defendants were merely proposing to enlarge without bringing it nearer.

And it appearing further that complainant's barn yard was nearer the well and more likely to injure it than the burying ground, *held*, that an injunction should be denied.

*Quære* whether there can be any legal ground for complaint for the pollution of subterranean waters when it is caused by a proper use, without negligence, of adjacent premises.

If there can be any such ground of complaint it can only be when the injury is of a very positive and substantial character.

Appeal from Kalamazoo. Submitted June 30. Decided October 5.

BILL of injunction. Complainant appeals. Dismissal affirmed.

*George M. Buck* for complainant. Injunction lies to restrain public officers in the exercise of a supposed duty to the injury of private rights : *Cooper v. Alden* Har. Ch. 72 ; *Mohawk etc. R. R. v. Artcher* 6 Paige 83 ; *Darby v. Wright* 3 Blatchf. 170 ; *Terrett v. Sharon* 34 Conn. 105 ; *Com. v. Colley* 29 Penn. St. 121 ; *Baltimore v. Porter* 18 Md. 284 ; regularly organized bodies named by statute, may be sued, though not corporations by these names : *Johr v. Supervisors* 38 Mich. 532 ; *Board of Health v. East Saginaw* 45 Mich. 257.

*Edwin M. Irish* and *Dallas Boudeman* for defendants. One who has bought his premises with knowledge of a neighboring nuisance cannot afterwards enjoin it : *Gilbert v. Showerman* 23 Mich. 448 ; one who buys a lot adjacent to land dedicated to public use takes it subject to the inconveniences attendant thereto : *Morrison v. Hinkson* 87 Ill. 587 ; injunctions against cemeteries were denied in *Ellison v. Commissioners* 5 Jones N. C. Eq. 57 ; see also *Greencastle v. Hazelett* 23 Ind. 186 ; *Lakeview v. Letz* 44 Ill. 81 ; an injunction will not be granted to restrain an act which does not affect, for secondary purposes, water which has become useless for primary purposes : Wood on Nuisances 708 n. 3 ; *Dunn v. Hamilton* 2 S. & Mc.L 356 ; an injunction will not be granted against an injury that is not *per se* a nuisance and which may or may not become so : High on Inj. § 488 ; nor to restrain the use of a cemetery on the ground of injury to subterranean currents : *Chatfield v. Wilson* 28 Vt. 49 ; *Harwood v. Benton* 32 Vt. 737 ; *Frazier v. Brown* 12 Ohio St. 294 ; Washb. Easements 363 ; nor because it affects the market value of adjoining property :

*New Orleans v. St. Louis Church* 11 La. Ann. 244; *Musgrove v. St. Louis Church* 10 La. Ann. 431.

COOLEY, J. This suit is instituted to restrain the township board of health of the township of Richland in the county of Kalamazoo from locating a burial place for the dead in the immediate vicinity of the dwelling house of the complainant in the incorporated village of Richland in said township. The grounds of equitable jurisdiction which are assigned in the bill are, that the use of the proposed site for burial purposes will be detrimental to the health of the people of the village; that it will corrupt the water of their wells and render it unfit for use, and for these reasons become a public nuisance; and that it will also be specially injurious to complainant whose dwelling and well are near it. The defense to the suit is based on several distinct grounds, one of which is that the authority to establish burial places is confided in this State exclusively to the boards of health, and is a discretionary authority which cannot be controlled and overruled by the courts.

There is no doubt that under the statutes boards of health have large discretionary powers in providing for the interment of the dead. It is made the duty of the township board for each township to purchase therein so much land for burying grounds as shall be necessary for burying the dead of such township, provided suitable grounds can be procured in the township for the purpose, and if not, then in an adjoining township. They are also to make all regulations which they may deem necessary for the interment of the dead, and respecting burying grounds for their township. Comp. L. § 1696. These powers they must exercise according to their own judgment; and no appeal is provided for, whereby their action can be reviewed by any superior authority empowered to substitute its judgment for theirs. But if discretion is abused or their judgment improperly exercised, there is no doubt of the right of the judiciary to restrain the abuse. A superintending authority over all inferior tribunals is expressly conferred upon the

circuit courts by the Constitution—art. vi, § 8—and this will be exercised not only to keep them within their jurisdiction, but also to restrain any oppressive exercise of powers whereby the rights of the public or of individual citizens will be invaded. As is said in *Cooper v. Alden* Har. Ch. 72, 91, the court of chancery "has undoubted·jurisdiction to interfere, by injunction, where public officers are proceeding illegally or improperly, under a claim of right to do any act to the injury of the rights of others;" and it has been exercised in many cases, under a great variety of circumstances, and against State officers as well as those of inferior grade. *Palmer v. Rich* 12 Mich. 414; *Ryan v. Brown* 18 Mich. 196; *Kinyon v. Duchene* 21 Mich. 498; *Merrill v. Humphrey* 24 Mich. 170; *Clement v. Everest* 29 Mich. 19; *Bristol v. Johnson* 34 Mich. 123; *Marquette etc. R. R. Co. v. Marquette* 35 Mich. 504; *Flint etc. Ry. Co. v. Auditor General* 41 Mich. 635; *Folkerts v. Power* 42 Mich. 283.

But while it is undoubted that the court has jurisdiction, it is equally clear that the jurisdiction should only be exercised when a plain case has been made out. Defendants are acting officially, upon a subject which by law and the choice of their fellow-citizens has been committed to their charge, and it must be intended that they are acting in good faith until the contrary appears. The ordinary presumption is that officers perform their duty; and this will support the action of boards as well as of officers acting singly. *Lacey v. Davis* 4 Mich. 140; *Thayer v. McGee* 20 Mich. 195; *Stockle v. Silsbee* 41 Mich. 615. The principle is forcibly stated in *Cooper v. Williams* 4 Ohio 253: "Although a case strong enough to justify our interposition may arise from corruption, from malicious intention, or caprice, yet, in the absence of these, the court would pause, before it will assume to control the discretionary powers the law intends to confide to them. The security, for the faithful exercise of this discretion, is found, not in the superintendence of courts of justice, but in the individual reputations of the commissioners, in the tenure of their office, in their acting openly on the rights of others, in the face of a people,

vigilant to watch and acute to discern, and in their being exposed to the overwhelming force of public opinion."

Has the clear case, required by this principle, been made out by this complainant? The defendants insist that it has not. They deny that the evidence shows the proposed burying ground will be any nuisance whatever, either public or private. They say further that if it can be an inconvenience or annoyance to complainant he is precluded from complaining of it, for the reason that it is to be merely an addition to or extension of an existing cemetery by the side of which the complainant purchased and located his residence many years since, thereby voluntarily assuming all the natural and inevitable consequences of being near it, and that his well, which he fears is to be ruined by it, is in no danger beyond that to which he has voluntarily exposed it, and which, in fact, has already rendered it unfit for use. Such in brief is the issue which is made by the answer.

The evidence is voluminous, but there is less conflict than is usually encountered in such cases. The village of Richland appears to be a small hamlet, containing less than three hundred people, situated in a level country of prairie formation, and with its population on or near a highway running through it east and west. Another highway called Park street crosses this at right angles, leaving most of the population to the west. Some sixty rods east of the crossing was located the old burial ground mentioned in the answer, and this has been used many years until it is nearly filled with graves. It is admitted that while this ground was thus being used the complainant purchased the farm adjoining it on the east, his residence being twenty rods or so beyond the east boundary of the burying ground; and this is where he now resides. No other residence is so near the grounds except one on the opposite side of the highway about the same distance to the west. The grounds which the board of health have now procured for cemetery purposes are directly across the highway from the old grounds, but not extending so far east by two rods, and this, as well as the fact that they are on the other side of the highway, places

them a little further from complainant's residence. At first blush, therefore, there does not seem to be a very strong equity in complainant's case. The nuisance he complains of he has voluntarily made his neighbor, and if the proposed action of the defendants is likely to add to the annoyance, the addition is one he might well have anticipated when he moved into the vicinity. The grounds then in use must in time require enlargement, and the natural enlargement to look for would be the purchase of adjoining grounds. In *Gilbert v. Showerman* 23 Mich. 448, 456, where an offensive business was complained of under similar circumstances, we expressed the opinion that "the complainant, having taken up his residence in a portion of the city mainly appropriated to business purposes, cannot complain of the establishment of any new business near him, provided such new business is not in itself objectionable as compared with those already established, and is carried on in a proper manner." Much of what is said in *Robinson v. Baugh* 31 Mich. 290, is also applicable to the facts of this case. And it is proper to mention as a significant fact that the complainant, though he assumes to speak for the public, comes alone to make this complaint. Others ought to be equally solicitous for redress if the neighborhood is likely to be rendered uninhabitable, by the action complained of.

But the evidence leaves us in no doubt that, as concerns the health of the neighborhood, the fears of injury on the part of complainant are groundless. Many experts were examined on both sides, including Professors Langley and Vaughan of the State university, Professor Kedzie of the State agricultural college, and a number of the leading physicians of the State, and the general result of their evidence is, that the proposed occupation of the grounds will not be likely to affect sensibly the atmosphere of the vicinity so as to render it unhealthy. They generally agree that the deleterious influence, if any, is to be traced underground, and perceived in the water of wells; and this will be a private nuisance only, to be complained of by the owner of a well affected, as a peculiar grievance to him. There is then

no public nuisance, and the question is whether there is a private nuisance in the threatened injury to complainant's well.

We think the evidence tends to show that the occupation of the new grounds for burial purposes will be likely to affect to some extent any well that is or may be located in its vicinity, and particularly that it will be likely to affect the well of complainant. The evidence leads to the conclusion that the sub-surface waters from the burial grounds now in use find their way to the east, and that complainant's well is more likely to be affected by the use of the new grounds than is any other. If, therefore, his case were unembarrassed by the previous existence of a burying ground adjoining him, there would be some reason in complainant's protest even if there were not, in a strict legal sense, an equity. But he is further embarrassed by the fact, which is very clearly brought out in the testimony, that his barn-yard is nearer to his well than the burying ground, and much more likely to corrupt its waters. Indeed there seems to be little doubt that they are corrupted by it already; not, perhaps, to an extent appreciable without chemical tests, but sufficient to make it evident to experts that the danger complainant professes to fear is nearer at hand than the cause to which he directs the attention of the court. At most the proposed use of the new grounds will only be a third cause of corruption to the well, in addition to two others which complainant voluntarily takes the risk of; and it is probably the least likely of the three to bring sensible harm.

It has been decided in several cases that the percolation of filthy matter from the premises of the party who suffers it through the soil upon the premises of an adjacent owner to the injury of the latter is an actionable nuisance. *Tenant v. Goldwin* 1 Salk. 360; *Tate v. Parrish* 7 T. B. Monr. 325; *Columbus Gas Co. v. Freeland* 12 Ohio N. S. 392; *Marshall v. Cohen* 44 Ga. 489; *Pottstown Gas Co. v. Murphy* 39 Penn St. 257; *Greene v. Nunnemacher* 36 Wis. 50. And it has been said that the liability does not depend upon negligence, but that the reasonable precaution which

the law requires is effectually to exclude the filth from the neighbor's land. *Ball v. Nye* 99 Mass. 582; *Hodgkinson v. Ennor* 4 Best & S. 229. But all the cases in which this doctrine has been applied were cases in which, consistent with the proper use of the premises, the exclusion was practicable; and none of them goes to the extent contended for here. All of them agree that the injury must be positive and substantial, and such as fairly imposes upon the party causing it the duty of restraint. *Columbus Gas Co. v. Freeland* 12 Ohio N. S. 392, 400.

The movements of sub-surface waters are commonly so obscure that rights in or respecting them cannot well be preserved. They do not often have a well-defined channel, and it is not easy in many cases to determine in what direction their movements tend. If corrupted at one point the effect may be confined within very narrow limits, while at another, though no surface indications would lead one to expect it, the taint might follow the water for miles. In some cases a new well at a considerable distance from an old one may withdraw the water from the other and destroy it, while in other cases, in which the same result would seem more likely, there is no perceptible influence. It is in view of these difficulties that the rule of law has become established that owners of the soil have no rights in sub-surface waters not running in well-defined channels, as against their neighbors who may withdraw them by wells or other excavations. *Acton v. Blundell* 12 M. & W. 324; *Greenleaf v. Francis* 18 Pick. 117; *Roath v. Driscoll* 20 Conn. 533; *Chatfield v. Wilson* 28 Vt. 49; *Wheatley v. Baugh* 25 Penn. St. 528; *Bliss v. Greeley* 45 N. Y. 671; *Chase v. Silverstone* 62 Me. 175; *Frazier v. Brown* 12 Ohio St. 294; *New Albany etc. R. R. Co. v. Peterson* 14 Ind. 112. But if withdrawing the water from one's well by an excavation on adjoining lands will give no right of action, it is difficult to understand how corrupting its waters by a proper use of the adjoining premises can be actionable, when there is no actual intent to injure, and no negligence. The one act destroys the well, and the other does no more; the injury is the same in kind

and degree in the two cases. If the complainant may lawfully demand the relief he prays for in this case, we do not see why the same relief may not be demandable in a great variety of cases where the private grounds of individuals in such little hamlets are being used for the most common and necessary purposes. A privy vault, for example, will probably corrupt the sub-surface water to a greater extent than several graves; and if the one may not exist in the vicinity of private dwellings, neither may the other. And if a burial ground is an actionable nuisance to a person living within twenty or thirty rods, under the facts as they are presented in this case, it may be an actionable nuisance under other circumstances to one living a mile away. What would be necessary to support the action would be, to trace, by the application of chemical tests to the sub-surface waters, the corrupting influence of the grave for that distance.

It is possible that in this case the board of health might have located the new burying grounds more wisely and more considerately; but we do not think their action is successfully assailed. They are not shown to have acted fraudulently or through caprice, or to have exceeded in any respect their jurisdiction. If complainant is injured by their action, the injury is incidental to the exercise of a lawful right, and can therefore give no ground for an action. *Pontiac v. Carter* 32 Mich. 164. The State has conferred upon the defendants the power they have exercised, and left the exercise to their judgment. They have acted according to their judgment, and the action is conclusive. *Attorney General v. Burrell* 31 Mich. 25.

The decree dismissing the bill must be affirmed with costs.

The other Justices concurred.