### FARB et al. v. THEIS et al.     (No. 6965.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 23, 1923. Rehearing Denied March 21, 1923.)

**1. Injunction** ⬅️143(2)—**Showing held insufficient to authorize restraining order without hearing.**

Power to grant injunctions should be exercised without notice to persons sought to be restrained only when the necessity is pressing and the threatened injury immediately imminent, and, if occurring, irreparable; and hence, in an action to restrain defendants from taking further steps toward converting a tract of land into a cemetery, where no such showing was made, a restraining order should not have been granted without hearing.

**2. Injunction** ⬅️148(1)—**Bond required to authorize issuance of temporary writ.**

Rev. St. art. 4654, requiring petitioner for injunction to give bond, is mandatory, and, when disregarded, the order is void.

**3. Nuisance** ⬅️3(7)—**Cemetery not nuisance per se.**

A cemetery is not a nuisance per se, although it may be so located and operated that it become so.

**4. Cemeteries** ⬅️1—**Use of ground for cemetery not unlawful.**

The use of ground for a public or private cemetery is not unlawful.

**5. Waters and water courses** ⬅️101—**No rights in subsurface waters not in well-defined channels.**

Owners of the soil have no rights in subsurface waters not running in well-defined channels, as against neighbors who may withdraw them by wells or other excavations, even though this withdrawal results in the destruction of the other's water supply.

**6. Waters and water courses** ⬅️77 — **Allegations of pollution of stream from percolating waters from cemetery insufficient to warrant injunction.**

Where the allegations in a petition for injunction are not so definite and specific as to clearly show that waters percolating through a cemetery would pollute a stream and cause injury to plaintiff, they are insufficient to warrant an injunction.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by F. Theis and others against J. L. Farb and others. From an interlocutory order granting a temporary injunction, defendants appeal. Reversed and rendered.

Cobbs & Wiggin, of San Antonio, for appellants.
S. Engelking, of San Antonio, for appellees.

SMITH, J.  This appeal is from an interlocutory order granting a temporary injunction against appellants, restraining them from taking any further steps towards con-

---

verting into a cemetery a 15-acre tract of land owned by them and situated adjacent to and partly abutting upon Salado creek, in Bexar county. It appears that the restraining order was issued on January 31, 1923, without notice to the defendants, without a hearing of any of the parties, and without requiring the petitioners to make any bond. The defendants were required in the order to answer and show cause on February 10th, but this hearing was intercepted by the appeal.

It was alleged in the bill, upon which, alone, the order was granted, that—

The defendants, one of whom is the Eastview Cemetery Association, are "preparing to sell the land to the public in small lots for the burial of the dead bodies of human beings," and that "the said three tracts of land adjoin the Salado creek, which is a running stream containing waters that are derived from pure artesion wells, and the waters of said stream are now, and have been for a long time heretofore, used by these plaintiffs 'for drinking purposes, both for themselves and their families, as well as by other human beings and the dairy cattle of these plaintiffs;' and said waters have also been employed by these plaintiffs 'for the irrigation of their gardens and vegetables and other crops which have for a long time and are still being consumed by the plaintiffs as food, and have been and are sold by the plaintiffs' as human food. And these plaintiffs have water wells for drinking purposes, and into these water seeps from said three tracts of land.

"The said three tracts of land are so situated and are so underlaid with the subsoil of gravel and other earth that the drainage from the said tracts of water and other liquids passes into the said stream. The plaintiffs and each of them own large tracts of land, which lies on both sides of said stream and below the point at which the said three tracts of land adjoin the said stream; and plaintiffs have their homes and residences on their said farms adjoining said stream, and cultivate said lands and live upon the same with their families.

"If the said defendants should execute their intentions and purpose of converting the said grounds into a graveyard for the burial of dead bodies of human beings, then the rainwater and other waters percolating through the graves and the bodies contained therein would find their way into the stream of the said Salado creek, and would thereby pollute the waters thereof, and make the same wholly unfit for use of human beings, and would endanger the health and lives of these plaintiffs and their families, and would do irreparable injury to the real estate and personal property of these plaintiffs.

"If defendants should execute their said intention of establishing a graveyard on the said three tracts of land, or any part thereof, then the plaintiffs will be greatly prejudiced and injured by the same, as such graveyard will constitute a nuisance and a menace to the health and lives of these plaintiffs, and will damage the plaintiffs in their said real estate and personal property in the sum of $100,000."

As may be seen from the language of the petition, the location of the proposed cemetery with reference to appellees' homes or farms is not shown, except that the former is situated somewhere upstream from the latter. There is no allegation that the land has already been converted into a cemetery, or that lots are being sold for burial purposes, or that the burial of the dead therein has already begun or is imminent; the allegations being merely that the cemetery association is preparing to sell the land in small lots for these purposes. It will be observed, also, that the gravamen of appellees' complaint is that, after the land is finally put to the intended use, rainwater, falling upon the cemetery, will percolate through the graves, and the dead inhabitants thereof; and, being thus contaminated, will drain through the subsurface of the earth to the Salado, and there mingle with and in turn pollute the pure waters of that stream, from which appellees derive their supply of water for domestic and irrigation purposes.

[1] In our opinion, the restraining order should not have been granted without a hearing, even though the petition disclosed a right in any event to injunctive relief. The power reposed in the courts to grant injunctions is an extraordinary one, which should be used sparingly, with the utmost caution, and only where the necessity therefor is clearly and certainly shown. It should be exercised without notice to the persons sought to be restrained only when the necessity is pressing, and the threatened injury immediately imminent, and, if occurring, irreparable. No such showing was made in this case. The failure to give such notice, however, does not require reversal, and it has often been so held, upon the theory, no doubt, that the wrong resulting from the improvident action has been done, and the injury inflicted.

[2] It is difficult to understand why the restraining order was issued without at the same time, and in the same order, requiring the petitioners to give bond. The statute requiring the giving of bonds in such cases (article 4654) is mandatory, and, when disregarded, as was done here, the order is void. Cole v. Varner (Tex. Civ. App.) 246 S. W. 410; Phœbus v. Connellee (Tex. Civ. App.) 228 S. W. 982; Boykin v. Patterson (Tex. Civ. App.) 214 S. W. 611; Griffith v. State (Tex. Civ. App.) 210 S. W. 293; Marshall v. Spiller (Tex. Civ. App.) 184 S. W. 285; Ex parte Coward, 110 Tex. 587, 222 S. W. 531.

[3, 4] Obviously, a cemetery is not a nuisance, per se, although one may be so located and operated that it may become a nuisance, depending upon the position and extent of the grounds and the manner in which they are drained and the burials therein effected. The use of grounds for a public or private cemetery is not unlawful, for, to provide for the repose of the dead is just as lawful, and equally as necessary, as to provide for

the health and comfort of the living. The dead must be disposed of in some way, and burial in the earth, in conformity with the generally accepted plan of man's origin and destiny, seems most appropriate, and certainly is generally resorted to.

There is no complaint here that the proposed cemetery is so located that because of its proximity it will become an eyesore to appellees' premises, or that appellees will be annoyed by sight or sound of funeral displays, or by "reflections suggested by having before them constantly recurring memorials of death." There is no contention that the grounds of the proposed cemetery will not be properly drained, or that the places of sepulcher will not be properly prepared or maintained, nor is it contended that the surface water falling upon and flowing from these grounds will result in any injury to appellees or their property. The sole complaint is that the contaminated water will pass through the subsurface of the earth from occupied graves, and, finding its way to the Salado creek, pollute the waters thereof. The allegations upon which this complaint is based are stated in general terms, and may be said to be but the conclusions of the pleader. The peculiar facts upon which the conclusion is based are not set out with sufficient detail or certainty to support an action for injunctive relief, as will be shown hereafter. So far as the relative positions of appellees' and appellants' properties are concerned, the two premises may be miles apart, and so remote from each other as to make appellees' complaint preposterous on its face, or it may be true that appellants' premises are or will be so circumstanced, drained, and operated as to directly negative that complaint. As was said by the Supreme Court of Texas in a cemetery case, quoting from the Supreme Court of Maryland (Adams v. Michael, 38 Md. 123, 17 Am. Rep. 516):

"It is not enough for the parties complaining simply to allege that particular consequences will follow the erection of the factory; that may be their opinion or apprehension; but facts must be stated so that the court can see and determine whether the allegation is well founded. There is no allegation in the bill before us as to the precise proximity of the intended factory to the buildings of the complainants, nor are there any allegations as to the extent of the factory, what combustible materials are to be used therein, or the quantity of smoke and vapor likely to be emitted therefrom." Dunn v. City of Austin, 77 Tex. 139, 11 S. W. 1125.

[5] While it is unnecessary to here decide the question, it may be well to suggest that it is doubtful if appellee may enjoin appellants from the proposed use of the premises in controversy because of the alleged probable subsurface activities of the water falling upon the cemetery. It is now settled in this state, as well as in other jurisdictions, that owners of the soil have no rights in subsurface waters not running in well-defined channels, as against neighbors who may withdraw them by wells or other excavations, even though this withdrawal by the one results in the destruction of the other's water supply. Railway v. East, 98 Tex. 147, 81 S. W. 279, 66 L. R. A. 738, 107 Am. St. Rep. 620, 4 Ann. Cas. 827; Upjohn v. Board of Health, 47 Mich. 542, 9 N. W. 845, 41 Am. Rep. 178; Frazier v. Brown, 12 Ohio St. 294; Miller v. Imp. Co., 99 Va. 747, 40 S. E. 27, 86 Am. St. Rep. 924; Braasch v. Cemetery Ass'n, 69 Neb. 300, 95 N. W. 646, 5 Ann. Cas. 132. The reasons for this rule are given by the Supreme Court of Texas, in the East Case, in a quotation from the Supreme Court of Ohio in Frazier v. Brown:

"In the absence of express contract, and of positive authorized legislation, as between proprietors of adjoining lands, the law recognizes no correlative rights in respect to underground waters percolating, oozing or filtrating through the earth; and this mainly from considerations of public policy. 1. Because the existence, origin, movement and course of such waters, and the causes which govern and direct their movements, are so secret, occult and concealed, that an attempt to administer any set of legal rules in respect to them would be involved in hopeless uncertainty, and would be, therefore, practically impossible. 2. Because any such recognition of correlative rights, would interfere, to the material detriment of the commonwealth, with drainage and agriculture, mining, the construction of highways and railroads, with sanitary regulations, building and the general progress of improvement in works of embellishment and utility."

We see no reason why the same rule would not apply to cases such as the one presented here. It has in fact been extended in other jurisdictions so as to deny relief to adjoining landowners whose complaint is based upon alleged pollution of their drinking water from subsurface sources. Upjohn v. Board of Health, supra; Braasch v. Cemetery Ass'n, supra; City of Greencastle v. Hazelett, 23 Ind. 186. In the Upjohn Case, in so extending the rule, the Supreme Court of Indiana said that—

"If withdrawing the water from one's well by an excavation on adjoining lands will give no right of action, it is difficult to understand how corrupting its waters by a proper use of the adjoining premises can be actionable, when there is no actual intent to injure, and no negligence. The one act destroys the well, and the other does no more; the injury is the same in kind and degree in the two cases."

[6] For the purpose of testing the sufficiency of the allegations in the bill, let us consider the holding of our Supreme Court that—

"The existence, origin, movement and course of such [subsurface] waters, and the causes which govern and direct their movements, are

so secret, occult and concealed, that an attempt to administer any set of legal rules in respect. to them would be involved in hopeless uncertainty, and would be, therefore, practically impossible."

Can it be said that the allegations in appellees' bill presented such a lucid solution of these underground mysteries as to warrant the trial court in assuming, as a matter of law, that the waters under appellants' cemetery will be impregnated with poison, and that, retaining the taint, they will move in a particular course and in such volume as to reach and pollute the waters of Salado creek, and thus communicate disease to appellees, residing at an unknown distance down stream; or, in testing the sufficiency of appellees' complaint, can it be said that those allegations are so definite and specific as to clearly show, as a matter of law, that these results will necessarily follow the threatened action of appellants? If not, then those allegations are not sufficient to warrant a court in enjoining the threatened action.

Appellees have suggested that the order issued by the court was not a temporary injunction, but merely a temporary restraining order, prohibiting appellants from doing any of the things complained of in the bill until a hearing of the matter is had. But the distinction is not very practical, to say the least of it. The order entered served every purpose, and wrought all the injury incident to the granting of a temporary injunction, and must be so regarded for all such purposes. It should not have been granted without a hearing, and was void because issued without requiring the complainants to give the bond made requisite thereto by the statutes.

The order will be reversed, and the judgment is here rendered that the injunction or restraining order be dissolved and set aside

Reversed and rendered.