McCORKEL, County Superintendent, v. DIS-
TRICT TRUSTEES OF ROBINSON
SPRINGS SCHOOL DIST. NO. 76 OF
COMANCHE COUNTY et al.

No. 1944.

Court of Civil Appeals of Texas. Eastland.
Oct. 28, 1938.

Rehearing Denied Dec. 2, 1938.

Fred O. Jaye, of De Leon, for appellant.

W. D. R. Owen, of Eastland, for appellees.

FUNDERBURK, Justice.

District Trustees of Robinson Springs School District No. 76 of Comanche County, Texas, and District Trustees of Desdemona Independent School District of Eastland County, Texas, each a body corporate, brought this action on September 9, 1938, against B. R. McCorkel, as County Superintendent of Public Instruction of Comanche County, Texas, to enjoin said defendant "from paying any and all funds and moneys accruing to Robinson Springs School District No. 76, of Comanche County, Texas, which accrues from state and county Available Funds, State Aid and all local taxes and which accrues to said district before the expiration of the contract [described in the petition] between the Trustees of Desdemona Independent School District of Eastland County, Texas, and the Trustees of Robinson Springs District No. 76 of Comanche County, Texas, which said contract expires on August 31, 1939, to DeLeon Independent School District of Comanche County, Texas, or any other school district or any person and commanding him to pay said funds over to said Desdemona Independent School District of Eastland County, Texas * * *."

The contract to which the plaintiffs were parties, referred to in said pleading, was described therein as having been made under authority of section 17 of Senate Bill No. 185 (ch. 474, Acts 45th Leg., General and Special Laws, p. 1259), on or about September 9, 1937 by which Robinson Springs District agreed to transfer to Desdemona District all the pupils therein and the Desdemona District agreed to assume all Robinson Springs debts; to furnish free school instruction to them; not to call upon the State for any type of aid, or for

any amount of aid in excess of the amount to which these schools would otherwise be entitled under the provisions of the Equalization Law.

According to the allegations the contract began September 1, 1937, and was to expire August 31, 1939. It was approved by the County Superintendents of Comanche and Eastland Counties, and by the State Superintendent of Public Instruction. It was alleged that in pursuance of said contract, Desdemona Independent School District made the necessary arrangement for transportation of the scholastics residing in the Robinson Springs District to the Desdemona school buildings; provided the necessary additional equipment and room; made all necessary arrangements for teaching and taking care of said scholastics and necessarily expended a considerable sum of money otherwise unnecessary. That it had expended a considerable amount of money in payment of debts of Robinson Springs District which by the terms of the contract it had assumed, which was done on the faith of said contract and with the assurance that it would be reimbursed to a large extent for such expenditures and only from funds it would derive from the funds accruing to said Robinson Springs District and transferred to it under and by the terms of said contract, and that it would suffer damages in the sum of $1,000 if said contract was not carried out for the remaining time. It was further alleged upon information that some sort of purported contract had been made, not signed by the Trustees of Robinson Springs District, but signed only by the Trustees of the De-Leon Independent School District, and approved by the County and State Superintendents, by the terms of which the funds belonging to the Robinson Springs District was to be paid over to the DeLeon Independent School District, in violation of the alleged existing contract and to the damage of the plaintiffs for which they had no adequate remedy at law. The allegations concerning the immediate actions of the defendant sought to be restrained in part and commanded in part, were that "said B. R. McCorkel, County Superintendent * * * is about to pay said funds over to some other person or school district in violation of the provisions of said above described legal and binding contract and unless he be restrained from so doing and commanded to pay same over to said Desdemona School District he will pay same out to some other school district or some other

person and said funds will be beyond the reach of these plaintiffs and they will be wholly unable to get same or any part thereof" etc.

The prayer was for the issuance of an injunction both restraining and commanding action in accordance with the allegations and that "upon final hearing hereof these plaintiffs have judgment making said injunction perpetual" etc.

The fiat of the district judge was, in effect, a command to the clerk to issue a Temporary Injunction "in all things as prayed in the within and foregoing petition" etc.

The appeal by the defendant is from the order commanding the issuance of the Temporary Injunction.

The appellant presents three grounds of error, alleged as the basis of three separate Assignments of Error. The first is to the effect that the court erred in granting the temporary injunction, without a hearing, by reason of the fact that appellees' petition shows on its face a lack of necessary and indispensable parties to the suit. The second is that the court erred in granting a temporary injunction, because the same was in no wise prayed for in the petition. The third is that such action was erroneous because the petition did not show that resort was first had to the proper school authorities for a review and determination of their alleged grievances prior to a resort to the courts.

According to our interpretation of the law, applicable to the facts alleged in the plaintiffs' petition, as hereinafter discussed if the action of the judge in chambers in granting the temporary injunction was subject to no other legal objections than those presented by these three assignments of error we would be inclined to the view that no error is shown. According to the allegations of the petition, DeLeon Independent School District had no interest which could be affected by the suit. According to the definition of "temporary injunction" it is one which remains in force, unless sooner dissolved, until superseded by the final judgment in a case. When, therefore, the petition prayed for the issuance of an injunction and in the immediate connection prayed that upon a final hearing such "injunction" be made perpetual it was shown by such context that the "injunction" prayed for in the first place was a temporary injunction. This is said in full recognition of the rule

that a temporary injunction cannot properly be issued unless there be a specific prayer therefor. The prayer for an injunction to remain in force until the case can be tried upon its merits and a final judgment rendered, followed by a further prayer that that final judgment be one perpetuating the previous injunction, is, in our opinion, a prayer specifically for the issuance of a temporary injunction. Temple Independent School Dist. v. Proctor, Tex.Civ.App., 97 S.W.2d 1047; Hunt v. Hunt, Tex.Civ.App., 55 S.W.2d 911.

█ It is further our view that according to the allegations of plaintiffs' petition, as their effect is measured by the law as we herein interpret it, the plaintiffs were not required first to resort to the school authorities for a determination of the matters in issue. As we see it, the entire subject of the controversy presents a question of law and if plaintiffs were entitled to the relief sought the school authorities were without jurisdiction to grant such relief. If plaintiffs were entitled to the relief claimed against the County Superintendent, the County Superintendent would, of course, be disqualified to pass upon that matter, and if it should be assumed that an appeal could be taken in a matter in which he was so disqualified to other officers not disqualified, nevertheless there would be no way of preventing the threatened action pending this appeal. Under these circumstances, in our opinion, the law did not require the plaintiffs to have presented the subject of the controversy to the several school authorities as a prerequisite to their right of applying to a court of equity for the relief sought. State Line Consolidated School District v. Farwell Independent School Dist., Tex.Com.App., 48 S.W.2d 616.

█ Notwithstanding these views, we are of the opinion that the allegations of fact in plaintiffs' petition did not authorize the temporary injunction without a hearing.

█ One minor point is that the temporary injunction as prayed for, and granted, was in part mandatory, commanding the defendant to pay the funds over to the Desdemona Independent School District. The purpose of a temporary injunction is to preserve the status quo of the subject of controversy until the questions at issue can be finally determined by the judgment of the court. The mandatory provision of the temporary injunction, as here ordered, instead of preserving the status quo, would have destroyed it, and would have disposed of the entire subject matter of the suit before any determination of the controversy on its merits. Morgan v. Smart, Tex.Civ.App., 88 S.W.2d 769. We refer to this as a matter of minor importance only because if the restraining features of the injunction are to be sustained, this error may easily be corrected by this court by way of a reformation of the order.

We are of the opinion that the temporary injunction in any or all of its features was not authorized for the reason that there were no facts alleged showing the existence of such an emergency as would justify the issuance of a temporary injunction without a hearing. We very seriously doubt whether any facts could have existed sufficient to show such an emergency. The school funds, the payment of which was sought to be restrained, were those accruing to the Robinson Springs School District, for the school year beginning September 1, 1938, and ending August 31,1939. The suit was filed September 9, 1938, only eight days after the beginning of the year. It would seem to be very doubtful whether at that time any of the funds could have been on hand. If not, there could have been no immediate danger of their being paid over to anyone. In order to have shown the existence of an emergency justifying the issuance of a temporary injunction without a hearing, it was necessary to allege the facts to show at least a probability that unless the temporary injunction was issued before such time as the application could be set down for a hearing the funds would be paid over with the result that the writ when issued after hearing would be unavailing to accomplish its purpose. It is plain that no such facts were alleged.

█ In order that a verified pleading be sufficient to show a right to the issuance of a temporary injunction without notice and opportunity for a hearing on the application, it must appear from the facts alleged, among other things, that there exists a pressing necessity and that the threatened injury is immediately imminent. Farb v. Theis, Tex.Civ.App., 250 S.W. 290; Thurman v. Kirkland, Tex.Civ.App., 260 S.W. 677; International & G. N. Ry. Co. v. Anderson County, Tex.Civ.App., 150 S.W. 239; Cartwright v. Warren, Tex.Civ.App., 177 S.W. 197.

When, as is the case of an appeal from an order granting a temporary injunction ex parte without notice, the question of the correctness of the court's action is to be determined by the allegations of the application for such temporary injunction, taken to be true, the rule, contrary to that for testing the sufficiency of a pleading as against a general demurrer, is that the allegations of the application must be strictly construed, which is to say, construed most strongly against their sufficiency. Eclipse Oil Co. v. McAlister, Tex.Civ.App., 103 S.W.2d 420; Barkley v. Conklin, Tex.Civ.App., 101 S.W.2d 405; Houston Electric Co. v. City of Houston, Tex.Civ.App., 212 S.W. 198; Plough, Inc., v. Moore, Tex.Civ.App., 56 S.W.2d 681; Hood v. Scott, Tex.Civ.App., 67 S.W.2d 909.

The controversy in this case has arisen as the result of an uncertainty in the meaning of section 17, Chapter 474, General and Special Laws of 1937, p. 1259, entitled "Rural Aid and Equalization Fund Appropriation." Said section 17 reads as follows: *"Transfer of Entire District.* On the agreement of the board of trustees of the districts concerned or on petition signed by a majority of the qualified voters of the district and subject to the approval of the County Superintendent and State Superintendent, the trustees of a district which may be unable to maintain a satisfactory school may transfer its entire scholastic enrollment, or any number of grades thereof, to a convenient school of higher rank, and in such event, all of the funds of the district, including the State aid to which the district would otherwise be entitled under the provisions of this Act, or such proportionate part thereof as may be necessary, may be used in carrying out said agreement."

The plaintiffs, as disclosed by their pleading, have interpreted this provision to authorize the trustees of the district from which the transfer is proposed to be made and the trustees of the district to which such transfer is to be made to enter into a *contract* extending from September 1, 1937 to August 31, 1939, or in other words, covering two school years, and to obligate the transferee district, among other things, to assume debts owing by the transferor district. After careful study we reach a different conclusion as to the proper interpretation of this provision of the statute.

The purpose of the Act, of which section 17 above quoted is a part, was to appropriate $5,500,000 per year, or so much thereof as necessary for two years, beginning September 1, 1938 (should be September 1, 1937) and ending August 31, 1939, for the purpose of promoting public school interest and equalizing the educational opportunities, etc. The apparent purpose of section 17 was to permit a small district, unable to maintain a satisfactory school, to receive State Aid under provisions of the Act, and yet be authorized to transfer all the pupils to another school so that such State Aid, as well as all other funds coming to the small district should be paid to the school to which the transfer is made. Section 17 does not purport to authorize the trustees of one district to enter into *contracts* with the trustees of another district. It simply authorizes the trustees of certain districts which may be unable to maintain a satisfactory school therein to make the transfer provided for, subject to the conditions specified, among which being that the transfer be subject to the approval of the County Superintendent and State Superintendent. All that is provided to be done by the trustees of the district to which the transfers are made is that they agree to accept such transfer. An agreement is not necessarily a contract. An agreement may or may not be a contract. One common or popular meaning of the term is "to consent." That, we think, is the sense in which the word is employed in the clause "on the agreement of the board of trustees of the districts concerned."

The thing to be done in pursuance of such agreement is a *transfer by the trustees* of the district, which may be unable to maintain a satisfactory school. The next clause of the section—"or on petition signed by a majority of the qualified voters of the district"—read with its context, is manifestly ambiguous and requires construction. The ambiguity, however, does not involve, we think, the question of who is authorized to make the transfer. That in any event is to be done by the trustees of the district from which the transfer is to be made, whether the procedure be under the authority of the first clause or the second. Also, in either case, we think the transfer is to be made "subject to the approval of the County Superintendent and State Superintendent." The ambiguity poses this question: If the trustees fail or refuse to order a transfer, does it be-

come their mandatory duty to do so if petitioned by a majority of the qualified voters of the district and the County Superintendent and State Superintendent approve such action? The decision of this question is not necessary in this case and is not within the assignments of error or propositions briefed. It is of such importance that we do not feel that we would be justified in expressing our opinion upon it under the circumstances. The opinion we do express is that the subject matter of section 17 is not the authorization of *contracts,* but of *transfers* to be made, not by the County Superintendent as in case of other transfers (Vernon's Ann. Civil Statutes, Art. 2696), but by the trustees of the district, under the circumstances and conditions prescribed.

■■■■ "A quasi public corporation, such as a school district, which owes special duties to the public," says Texas Jurisprudence, "may not enter into any contract that is not expressly authorized by law." 37 Tex.Jur. 943, sec. 75. A more complete and accurate statement, we think, would be: A quasi public corporation, such as a school district, which owes special duties to the public, may not enter into any contract that is not expressly authorized by law or necessarily implied from powers expressly granted. The school laws make provision for consolidated school districts to assume the indebtedness of districts entering into the consolidation and provide that it is to be done upon a majority vote of the qualified voters. R.S.1925, Art. 2807. The provision in question is not for a consolidation. It says nothing about a contract and certainly we think it can not be implied, necessarily or reasonably, that it confers a power upon the transferee district to assume indebtedness of the district from which the transfers are made, contrary to the policy elsewhere expressed of authorizing such action only as the result of an election.

■■■■ It is our opinion that the allegations of the plaintiffs' petition, when read in the light of such interpretation of this statutory provision, show that there was a transfer of all the pupils of Robinson Springs School District to the Desdemona District for the year beginning September 1, 1937 and ending August 31, 1938. Plaintiffs' petition, as we read it, makes no contention that the transfer or payment of funds for the year beginning September 1, 1937 and ending August 31, 1938, is involved. It is apparent that the Trustees of the Robinson Springs District attempted to make the same transfer for the year beginning September 1, 1938 and ending August 31, 1939 that they made for the previous year. Our view of the law that it only authorizes *transfers* and does not authorize *contracts* raises the question of whether a transfer made on September 9, 1937 for the year beginning September 1, 1938 and ending August 31, 1939, was authorized. This question would perhaps present some difficulty, but for a rather clear indication of the policy of the law expressed in other parts of the same Act. For instance, a sentence in section 15a provides "that the application for Aid (including high school tuition) for the *current year* shall not be approved in an amount in excess of the amount of money available during the *current year* for all types of Aid herein provided for. Even though the application for Aid, on a basis for need shown exceed the amount of money available during the *current year* for all types of Aid, then each application shall be proportionately reduced so that the total of all approved applications for the *current year* will not exceed the amount of money available for *said year* for all types of Aid." (Italics ours) A provision of section 15b is "All unused balances in Rural Aid Funds in any district on *August 31,* shall be returned to the proper authorized authority; provided however that the balances herein providing for the return of moneys shall be subject to the obligation of districts holding claims against that fund and subject to the re-apportionment of the obligation of the receiving district thereof." (Italics ours) Section 21 provides for the payment of Rural Aid, by warrant, of 50 per cent of the total amount allotted to any one school as the initial payment and "that the remaining payments shall be made on a percentage basis to the schools in such manner and amounts that the total expenditures for *any one year shall not exceed the total appropriation for that year.*" (Italics ours.) Another significant clause of the same section reads: "It is specifically provided herein that the State Board of Education and the State Superintendent of Public Instruction shall not pledge the State *nor incur obligations against the Rural Aid Fund* in any amount *or in any one year* in excess of the amount herein appropriated * * *." (Italics ours)

Thus, it seems that while the general purpose of the Act was to make a two years' appropriation, it carefully provided for a separation of the years and prohibited a pledging for the first year of the Aid appropriated for the second year. As applied to this case, it seems to have been contemplated by section 17 that State Aid may be granted to Robinson Springs District which by an authorized transfer would go to the Desdemona School District. According to plaintiffs' contention the State Aid, if any, for both years has already been appropriated by contract. The last quoted provision seems to us to prohibit such advanced appropriation whether by contract, as contended by the plaintiffs, or by transfer as we construe the provision.

It is true the law does not specify any particular time when the trustees are to order the transfer as it does transfers to be made by the County Superintendent under the statute before cited (Vernon's Ann.Civil Statutes, Art. 2696). It can plausibly be argued that if the contract made September 8, 1937, although insufficient as a contract, was sufficient as a transfer for the year September 1, 1937 to August 31, 1938, as we hold, then it would be sufficient as a transfer for the year September 1, 1938 to August 31, 1939. Aside from the policy indicated as we think by the other provisions of the same statute above set forth, there seems to us to be other good reasons why as a matter of public policy the authority to transfer should not be so construed. When trustees make the transfers provided for, they do so in performance of delegated functions of government. The law does not expressly authorize them to make transfers for more than one year at a time. A construction of their powers which could be shown to disable them from performing other governmental functions in the public interest should be rejected. Such is the case. Suppose that for the year September 1, 1938 to August 31, 1939, a consolidation of Robinson Springs District with some other adjacent district should seem desirable and be duly initiated by proper petitions. R.S. 1925, Arts. 2806–2811, Vernon's Ann.Civ. St. arts. 2806–2811. Must the right be denied because in the year previously by a transfer made for a future year all the school funds have been wholly appropriated to the Desdemona District, or, if not denied, must one of the schools entering into the consolidation furnish none of the funds to maintain the school for the first year, thus rendering it extremely improbable that the other school district would vote favorably on the proposition to consolidate? We think it is a more reasonable construction of the statute that it provides for the transfer to be made from year to year and at such time as not unreasonably to restrict the right of consolidation or of maintaining a school by aid of ordinary transfers into the district, or of any other right or power enjoyed under the law by the people of the district.

From the above expression of our views, it will appear that our action in reversing the judgment of the court below is not to be interpreted as authorizing the action which the injunction was issued to restrain or command. The rights of the parties, according to our view, have been indicated, except as they may be involved in the question of construction which we have deemed it inadvisable to pass upon in this case. It may safely be assumed, we think, that the County Superintendent will not undertake to make any disposition of the funds accruing to the Robinson Springs School District for the year September 1, 1938 to August 31, 1939, unless and until a transfer of the funds for that year, if any, has been made in accordance with the views expressed in this opinion.

For the reasons discussed, it is our conclusion that the judgment should be reversed and the temporary injunction dismissed. It is accordingly so ordered.

# MEMORANDUM DECISIONS