THE ATTORNEY GENERAL
OF TEXAS



PRICE DANIEL
ATTORNEY GENERAL

May 13, 1950

Hon. J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas

Opinion No. V-1054.

Re: The validity of a contract for
revaluation of property with-
in Grand Prairie Independent
School District, in reconsid-
eration of Opinion No. V-966.

Dear Dr. Edgar:

You have requested the opinion of this office on the a-
bove captioned matter.

Articles 2791 and 2792, V.C.S., expressly deal with the
assessment and collection of taxes by independent school districts.
Article 2827, V.C.S., specifically sets forth the purposes for which
public free school funds may be expended.

Sections 1 and 2 of Article 2827 read as follows:

"1. The State and county available funds shall be
used exclusively for the payment of teachers' and su-
perintendents' salaries, fees for taking the scholastic
census, and interest on money borrowed on short time
to pay salaries of teachers and superintendents, when
these salaries become due before the school funds for
the current year become available; provided that no
loans for the purpose of payment of teachers shall be
paid out of funds other than those for the then current
year.

"2. Local school funds from district taxes, tui-
tion fees of pupils not entitled to free tuition and other
local sources may be used for the purposes enumerat-
ed for State and county funds and for purchasing appli-
ances and supplies, for the payment of insurance pre-
miums, janitors and other employes, for buying school
sites, buying, building and repairing and renting school
houses, and for other purposes necessary in the con-
duct of the public schools to be determined by the Board
of Trustees, the accounts and vouchers for county dis-
tricts to be approved by the county superintendent; pro-
vided, that when the State available school fund in any
city or district is sufficient to maintain the schools
thereof in any year for at least eight months, and leave

a surplus, such surplus may be expended for the pur-
poses mentioned herein."

It is a general rule that a school district, through its
board of trustees, may only enter into contracts authorized by law
or necessarily implied from the powers expressly conferred by
law. McCorkel v. District Trustees of Robinson Springs School
Dist. No. 76, 121 S.W.2d 1048 (Tex. Civ. App. 1938); 37 Tex. Jur.
939, 943, Schools, §§ 71, 75.

The contract under consideration was entered into by
the Board of Trustees of the Grand Prairie Independent School Dis-
trict and the Texas Educational Service Company, a corporation en-
gaged in the business of appraising and valuing property.

The contract provided generally for the appraisal and
evaluation of all lots and parcels of land and all buildings and im-
provements located on land situated in the district. The results of
the appraisals and other pertinent information were to be recorded
on record cards which were to become the permanent record of the
school district. The company also agreed to list, appraise, and eval-
uate, with certain exceptions, all tangible personal property and busi-
ness and professional property. In addition, the company agreed to
furnish various other special services to the school district.

In Attorney General's Opinion No. V-966, in which we
held this contract to be void, it was pointed out that there were no
authorities directly in point on the question and that there apparent-
ly were conflicting opinions by the Courts of Civil Appeals on re-
lated questions. Aldrich v. Dallas County, 167 S.W.2d 560 (Tex. Civ.
App. 1942, error dism. w.o.j.); Marquart v. Harris County, 117 S.
W.2d 494 (Tex. Civ. App. 1938, error dism. w.o.j.); Simkins v. City
of Corsicana, 86 S.W.2d 792 (Tex. Civ. App. 1935); Roper v. Hall,
280 S.W. 289 (Tex. Civ. App. 1926).

We relied principally on the Marquart and Aldrich de-
cisions in our prior opinion. The court in the Marquart case held
a similar contract, which had been made by the Commissioners'
Court of Harris County, to be void because it had the effect of usurp-
ing the privileges and obligations of the tax assessor-collector. In
our prior opinion we concluded that we were bound by the Marquart
and Aldrich decisions which were rendered later in point of time.

Since Opinion No. V-966 was released on December 14,
1949, this question has again come before the courts for determi-
nation. The court in Crosby v. P. L. Marquess and Co., 226 S.W.2d
461 (Tex. Civ. App. 1950, error ref. n.r.e.), on January 5, 1940, up-
held the validity of an appraisal and evaluation contract which had
been entered into by the Trustees of the Kountze Corporate School

District with P. L. Marquess and Company. The preamble to that contract provided that the company was to gather and compile information on the value of all property situated in the district. The company also had to furnish a complete file in bound ledgers and had to complete the inventory sheets and tax rolls on forms furnished by the school district. The company specifically agreed to "gather and compile information relating to the value of all real and personal property customarily thought of as being taxable, i.e., minerals, land, improvements, and inventories of goods, wares and merchandise situated in such District as of January 1, 1948, for the use of such District in the assessing and collection of taxes."

The appellants in the Crosby case expressly relied on the Marquart case in their brief on appeal to the Court of Civil Appeals in their contention that the contract was invalid because, in providing for the valuation of the entire taxable property located in the district and the preparation of the tax rolls by the company, the contract in effect superseded the powers and duties of the tax assessor-collector. The court in answer to this contention said (at page 463):

> "Under the testimony in this record the Marquess Company worked with the Tax Assessor and Collector of the School Board. They did not value the land in the School District but did make an appraisal of the improvements on the land. This contract did not obligate the Marquess Company to secure information as to whether any property had been rendered for taxation or not. It was not the type of contract which is commonly referred to as a 'tax ferret contract'. The contract does not disclose the intent of either party that the work to be done by the Marquess Company should be done to the exclusion of the Board's Tax Assessor and Collector. There is nothing in the contract which indicates an intention to confer any powers of the Tax Assessor upon the Marquess Company and it is apparent from the testimony that no powers of the Assessor and Collector were conferred exclusively upon the Marquess Company. We believe the question of validity of this contract is governed by the case of Roper v. Hall, Tex. Civ. App., 280 S.W. 289, and hold that the making thereof was within the implied powers of the trustees of the School District."

The court, in holding the contract was not controlled by the Marquart decision, said (at page 464):

> "It may be conceded, however, that the language of the contract which is the subject of this litigation

may seem to place it within the scope of the opinion in
Marquart et al. v. Harris County, supra, and if such ex-
pression in that opinion is the law such a contract might
be illegal and void. We are not convinced, however,
that this contract contains the vices in its terms and in-
tendments as that one which was condemned in Marquart
v. Harris County, supra, and do not accept it as a final
authority requiring a holding here that this contract is
void."

While the Simkins case, supra, was evidently not brought
to the attention of the court in the Marquess case, we believe that it
is closely related to this question. The pertinent facts involved in
that case were that the City of Corsicana employed an "expert" to
"ascertain the value of all real property within the city." Suit was
later brought by the city to recover delinquent ad valorem taxes on
certain real property owned by the defendant. The defendant alleged
that the assessed valuations of the property should be set aside be-
cause they were excessive and the board of equalization in fixing the
valuations of the property had adopted as a whole the valuation re-
port of the "expert" without otherwise ascertaining the value of the
property. Judge Alexander, speaking for the Court, said (at page
794):

"We know of no valid reason why a tax board can-
not employ an expert to assist it in arriving at the true
value of taxable property, and when such expert has been
employed the board should have a right to take into con-
sideration the information so furnished by him in ascer-
taining the true value of property for tax purposes. Stev-
ens v. City of El Paso (Tex. Civ. App.) 81 S.W.(2d) 149;
Federal Royalty Co. v. State (Tex. Civ. App.) 42 S.W.(2d)
670. But it must be remembered that such experts so
employed bear no official relationship to the property
owner and have no statutory authority to fix the value
at which the property is to be assessed for taxes. The
matter of ascertaining the true value of the property is
committed alone to the board of equalization, and that
board must formulate its opinion and exercise its judg-
ment in arriving at the value of each particular piece of
property. Such board cannot avoid its responsibility by
delegating the matter to an irresponsible third party
nor discharge its duty by arbitrarily adopting in toto a
blanket report of such expert as to the value of all prop-
erty in the city and thereafter adhere thereto without
regard to the true value of the particular piece of prop-
erty under consideration."

We are unable to see any significant differences between the contract involved in the Crosby case and the one here under consideration. It is our opinion, in view of the Crosby decision, that the Board of Trustees of the Grand Prairie Independent School District was authorized by its implied powers to execute the appraisal and valuation contract with the Service Company and the contract, on its face, is legal and valid. Opinion No. V-966 overruled.

### SUMMARY

The Board of Trustees of Grand Prairie Independent School District had the implied authority to enter into a contract providing for the compilation and recordation of information relating to the appraisal and valuation of property located within the district for the use of the district in the assessment and collection of ad valorem taxes. Crosby v. P. L. Marquess and Co., 226 S.W.2d 461 (Tex. Civ. App. 1950, error ref. n.r.e.); Opinion No. V-966, which was written before the Crosby opinion, is overruled because of the subsequent decision in that case.

Yours very truly,

PRICE DANIEL
Attorney General

By Frank Lake
Frank Lake
Assistant

APPROVED:

W. V. Geppert
Taxation Division

Joe Greenhill
First Assistant

Price Daniel
Attorney General

FL/mwb